**HOME BUILDERS ASSOCIATION OF GREATER ST. LOUIS, Appellant,**

v.

**CITY OF ST. PETERS, and Robert Irwin, Respondents.**

No. 63683.

Missouri Court of Appeals, Eastern District, Division Three.

Jan. 11, 1994.

David J. Newburger, St. Louis, for appellant.

Rollin J. Moerschel, St. Charles, for respondents.

Before GARY M. GAERTNER, C.J., and SIMON and PUDLOWSKI, JJ.

PER CURIAM.

Appellant, Home Builders Association of Greater St. Louis, appeals from a judgment entered in the Circuit Court of St. Charles County in favor of respondents, City of St. Peters and Robert Irwin, finding statutory authority for the promulgation of Ordinance No. 1933. We affirm.

Ordinance No. 1933 ("Ordinance"), passed on November 12, 1992, requires that any new residential subdivision platted for land development in the City of St. Peters ("City") be encumbered by an indenture which contains, among others, the following minimum requirements:

1) any subdivision [1] have at least three subdivision managers;

2) election of the subdivision managers must be transferred to the lot owners according to a certain formula based on the number of lots sold;

3) subdivisions that have indentures of covenants and restrictions must assess a fee sufficient to enforce the covenants and restrictions;

4) each developer seeking to file a first final plat for subdivision development must establish a trust account at a land title company or federally insured banking institution, deposit $2,000 in the account, and pay any service charges associated with the account;

5) the trust instrument for said trust account must provide that after ten or more lots are sold in the subdivision, a majority of the lot owners, other than the developer, may require the trustee of the trust account to reimburse those lot owners or their attorneys for the costs of enforcing covenants and restrictions which have not been enforced by the subdivision managers;

---

1. "Subdivision" is defined in the Ordinance as "a division or redivision of land into two or more residential lots, tracts, sites or parcels for the purpose of transfer of ownership, which has been recorded with the Recorder of Deeds for St. Charles County."

6) after the sale of all lots in the subdivision, any funds remaining in the trust account must be paid to the subdivision managers.

The Home Builders Association of Greater St. Louis ("HBA") filed a petition for declaratory judgment and injunction against the City and Robert Irwin, City Administrator. The HBA sought a declaration that the Ordinance was unlawful and unconstitutional and a permanent injunction against its implementation. The parties agreed there were no issues of material fact to be decided. The matter was submitted without trial on the pleadings and oral argument.

The Findings of Fact, Conclusions of Law, and Decree were issued on February 22, 1993. The trial court found that RSMo § 79.450.7 provided the City with the statutory authority necessary to promulgate the Ordinance. This appeal ensued.

The HBA raises three points of error. First, it argues that RSMo § 79.450 does not give the City the authority to promulgate the type of Ordinance at issue here. According to the HBA, RSMo § 89.410 provides an exclusive list of subjects that ordinances regulating subdivisions may address, and the subjects covered by the Ordinance at issue are not among those in the statute. The City argues that RSMo § 79.450 does provide it with the authority to enact such an ordinance as the one before us.

The HBA claims the only potential authority for an ordinance such as this would have to be found in RSMo § 445.030, a statute addressing the requirements for a city's acceptance and recording of a plat, and RSMo § 89.410, a statute governing the subdivision of land which specifically limits the broad reaches of RSMo § 445.030. *See City of Bellfontaine Neigh. v. J.J. Keeley R. & B. Co.*, 460 S.W.2d 298, 303 (Mo.App., St.L.D. 1970). RSMo § 89.410 specifically covers physical improvements to a subdivision which may be required by a city before plat approval is provided. We agree with appellants that RSMo § 445.030 and § 89.410 do not provide authority for Ordinance 1933.

■■■ However, we do find that RSMo § 79.450 covers this situation.[2] Chapter 79 of the Revised Missouri Statutes deals with police and health regulations. Under this chapter, RSMo § 79.450.7 specifically states:

> The board of aldermen may enact or make all ordinances, rules and regulations, not inconsistent with the laws of the state, expedient for maintaining the peace, good government and welfare of the city and its trade and commerce.

The purpose of the police power is to promote the public health, safety and welfare. *Blue Cross Hosp. Service, Inc. v. Frappier*, 681 S.W.2d 925, 930 (Mo. banc 1984). Although not unlimited, the police power is very broad. *City of Clayton v. Nemours*, 353 Mo. 61, 182 S.W.2d 57, 60 (1944).[3] An ordinance enacted pursuant to the police power of a city is presumed to be valid, and the party challenging said ordinance bears the burden of proving its invalid-

2. Appellant suggests RSMo § 79.450.7 can only apply here if it is found the Ordinance constitutes regulation of trade and commerce within the municipality. It does. Trade and commerce, as defined in *Black's Law Dictionary* 1338 (5th ed. 1979), "when used in juxtaposition impart to each other enlarged signification, so as to include practically every business occupation carried on for subsistence or profit and into which the elements of bargain and sale, barter, exchange, or traffic, enter." We find no support for appellant's position that the sale of real estate and organization of subdivisions are outside the bounds of trade and commerce.

3. "A general welfare or similar clause, granting extremely broad power to a municipal corporation, is liberally construed to accord to a municipality wide discretion in the exercise of the police power.... The cases, indeed, reveal an increasing judicial inclination under such a clause to accord to municipal authorities wider discretion in the reasonable and nondiscriminatory exercise, in good faith, of the police power in the public interest. While under the clause, or under the guise of it, personal and property rights recognized by general law and guaranteed by organic provisions cannot unreasonably be restrained, courts uniformly regard the clause as ample authority for a reasonable exercise, in good faith, of broad and varied municipal activity to protect the health, morals, peace and good order of the community, to promote its welfare in trade, commerce, industry, and manufacture, and to carry out every appropriate object contemplated in the creation of the municipal corporation." McQuillian Mun. Corp. § 24.44 (3rd Ed.).

ity. *Lodge of the Ozarks v. City of Branson,* 796 S.W.2d 646, 655–6 (Mo.App., S.D.1990). "Businesses, trades, occupations and vocations carried on within a municipal corporation are subject to reasonable regulation by the municipal corporation under its police power which may be delegated to the municipal corporation in express terms or by implication." *Marshall v. Kansas City,* 355 S.W.2d 877, 881 (Mo. banc 1962).

■ We find the enactment of Ordinance No. 1933 a proper use of the City's police powers. By requiring that the trust fund be established before plat approval is granted, the City is attempting to protect the welfare of future buyers in these subdivisions. Those buying into subdivisions with duly-enacted covenants and restrictions have a legitimate expectancy that said rules will be followed by other property owners within the subdivision. This trust fund simply serves to defray the costs associated with potential litigation to enforce the covenants and restrictions. Point denied.

■ For the second point, the HBA contends the provision in the Ordinance requiring establishment of a $2,000 trust fund violates the Hancock Amendment[4] in that there is a fee, tax or license charged by the government and enacted without a vote of the populace. We find the test provided by the Missouri Supreme Court in *Keller v. Marion County Ambulance Dist.,* 820 S.W.2d 301, 304–05 n. 10 (Mo. banc 1991) dispositive on this point.

The *Keller* test requires a consideration of all five factors of the test, with no one factor controlling. *Id.* at 305, n. 10. It must first be determined when the fee is paid; fees paid on a periodic basis are generally subject to the Hancock Amendment, while those paid "only on or after provision of a good or service" are typically not subject to the amendment. *Id.* at 304, n. 10. Here, establishment of the trust account requires a one-time deposit of $2,000. Once the trust account is in place and the additional requirements of the ordinance are met, the developer receives plat approval and is able to proceed with the subdivision development.

Thus, application of this factor to the Ordinance indicates the Hancock Amendment is not applicable.

The second consideration under *Keller* necessitates a look at who pays the fee. *Id.* Where all or most of the residents of a political subdivision are susceptible to the fee, the Hancock Amendment generally applies; whereas, if only those who actually benefit from the good or service provided are charged, the Hancock Amendment likely will not apply. *Id.* The Ordinance is limited to developers of subdivisions which have indentures of covenants and restrictions. These developers are the only ones who must establish the trust funds, and the only ones who initially benefit upon approval of the plats.

Next, the Supreme Court has determined that "fees not subject to the Hancock Amendment are likely to be dependent on the level of goods or services provided to the fee payer." *Id.* Again, the Ordinance requires a one-time fee for a one-time service. Only those requiring the service must pay the fee. This factor indicates the inapplicability of the Amendment to the $2,000 trust account.

Fourth, it is generally found that the Hancock Amendment does not apply to the fee paid if the government provides goods, services, or permission to use government property upon payment. *Id.* Pursuant to the Ordinance, plat approval, a government service, will be provided upon the developer's fulfillment of the Ordinance requirements. Therefore, the Hancock Amendment would not apply here.

Finally, in situations where the government has traditionally and exclusively provided the goods, services, or permission for which the fee is paid, the Hancock Amendment would likely apply. *Id.* at 304–305, n. 10. Plat approval for subdivision development is a government function. See RSMo § 445.030. The Hancock Amendment generally requires voter approval for the enactment of fees of this type. However, the first four factors indicate the trust fund requirement is not simply a "tax denominated as a fee." *Id.* at 305, n. 10. Therefore, we do not

4. Mo. Const. Art. X, §§ 16–24.

view the establishment of the trust fund as a violation of the Hancock Amendment. Point denied.

■ For the third and final point, the HBA asserts the Ordinance's requirement that a trust fund be set up by the developer amounts to a taking of property without due process.[5] We are guided by the decision in *Home Bldrs. Ass'n, etc. v. City of Kansas City*, 555 S.W.2d 832 (Mo. banc 1977). There, the HBA and others challenged the constitutionality of a city ordinance requiring developers to dedicate portions of the subdivisions for parks. The Court determined that if the municipality has statutory authority for its acts, and the burden placed upon the developers by the ordinance is reasonably attributable to their activity, then the ordinance is permissible. *Id.* at 835.

Such is the case before us. We have found the City had authority to promulgate the Ordinance pursuant to its police powers under RSMo § 79.450. We also find the establishment of the trust fund for enforcement of subdivision covenants and restrictions to be reasonably related to the activities of the developer. The developer designs the subdivision, subdivides the land, constructs the homes, and, pursuant to the Ordinance, establishes the initial governing body for the development. We hold that the securing of a $2,000 trust fund for use in enforcing the covenants and restrictions associated with the subdivision is reasonably attributable to the activity of the developer. Point denied.

Based on the foregoing, the decision of the circuit court is affirmed.