Charles **ASHWORTH**,
et al., **Appellants,**

v.

**CITY OF MOBERLY, Missouri,**
**Respondent.**

**No. WD 58716.**

Missouri Court of Appeals,
Western District.

July 24, 2001.

Dennis Owens and Robert J. Wise, Kansas City, Attorneys for Appellants.

Richard B. Blanke, St. Louis, Kevin M. O'Keefe, Clayton, Attorneys for Respondent.

Before ULRICH, P.J., and SMITH and NEWTON, JJ.

EDWIN H. SMITH, Judge.

The appellants, consisting of thirteen owners of residential rental properties located within the city limits of the respondent city, the City of Moberly, appeal the summary judgment of the circuit court for the respondent in the appellants' action for declaratory judgment and injunctive relief, seeking to invalidate, *in toto*, Municipal Ordinance 7063 on five grounds and enjoin the respondent from implementing and enforcing it. The ordinance, which was enacted without approval of a majority vote of the qualified voters of the respondent, requires, *inter alia*, the owner of a rental unit within the respondent's city limits to obtain a rental permit, the issuance of which is conditioned upon the payment of a "permit and inspection fee" and an inspection of the unit before it may be rented.

The appellants raise three points on appeal. In Point I, they claim that the trial court erred in granting summary judgment to the respondent on their action for declaratory judgment and injunctive relief because it was not entitled to judgment as a matter of law in that based on the summary judgment record presented, the payment of the permit and inspection fee required by the ordinance constituted a "tax, license or fee" governed by the "Hancock Amendment," MO. CONST. art. X, § 22(a), which was imposed without the approval of a majority of the qualified voters of the respondent city in violation of the Amendment. In Point II, they claim that the trial court erred in granting sum-

mary judgment to the respondent because it was not entitled to judgment as a matter of law in that based on the summary judgment record presented, the respondent, as a third-class city, did not have the requisite statutory authority to enact Ordinance 7063. In Point III, they claim that the trial court erred in granting summary judgment to the respondent because it was not entitled to judgment as a matter of law in that based on the summary judgment record presented, Ordinance 7063 "promoted" warrantless searches of the appellants' properties in requiring annual inspections of their rental units prior to the issuance of the necessary permits allowing them to be rented, which violated the Fourth Amendment of the United States Constitution and Article I, Section 15 of the Missouri Constitution.

We affirm.

## Facts

On or about September 6, 1996, the respondent city, a third-class city acting through its city council, enacted Municipal Ordinance 7063, without submitting it to a vote of the qualified voters of the respondent city. The ordinance, as enacted, requires the owners of non-owner occupied rental units within the city to obtain a permit from the respondent before the units may be lawfully rented for human habitation. The purpose of the ordinance, as stated in § 1 therein, "is to protect the public health, safety and general welfare of the people in the City in non-owner occupied dwellings" and to "prevent housing conditions that adversely affect or are likely to adversely affect" them. In this respect, it provides a number of standards that a rental unit must meet in order for the owner to qualify for a permit.

As to the issuance of a permit, the ordinance provides that "the owner of each [rental unit] ... shall make written appli-

cation to the Director of Community Development for a permit," and that once issued, such a permit will be renewed annually, based on the date of its initial issuance and/or upon a change of ownership. Before a rental permit can be obtained, however, the ordinance provides that the owner of a unit must: (1) pay a permit and inspection fee; and (2) have the unit inspected by an authorized city inspector. The ordinance further requires that the fee be paid with the initial application for the permit. Thereafter, the fee is due and payable on an annual basis or a change of ownership, in accordance with the following schedule:

### PERMIT AND INSPECTION FEES

| | | | |
|---|---|---|---|
| (1) | Single Family Dwelling | | $35.00 |
| (2) a. | Main Structure or Duplex Multi-Family Dwellings | a. | $25.00 (Main Structure) |
| b. | Individual Dwelling units | b. | 10.00 (Per Unit) |
| (3) a. | Main Structure or Boarding House | a. | 25.00 (Main structure) |
| b. | Sleeping Rooms | b. | 5.00 (Per Room) |

As to the required inspections, § 15(2) of the ordinance states:

[i]f any owner, occupant or other person in charge of a dwelling or a dwelling unit fails or refuses to permit free access and entry to the structure or premises under his control for any inspection pursuant to this ordinance the inspector may seek a search warrant or other appropriate court order authorizing such inspections.

The ordinance also provides that notices of noncompliance are to be sent to those owners whose rental units fail to comply with its requirements, and that any owner who rents property without a permit is subject to a fine of not less than fifty dollars nor more than five hundred dollars per day for each offense for as long as the offense continues.

On July 26, 1999, the appellants (Charles Ashworth, Beth Ashworth, Raymond Kirgan, Carol Kirgan, Keith Botkins, Mary Catherine Botkins, Jim Foster, Judy Foster, June Hoskins, Donald Marshall, Karen Marshall, Douglass Graybill, and Connie Graybill) filed a five-count petition for declaratory judgment and injunctive relief in the Circuit Court of Randolph County seeking to invalidate the ordinance on various grounds and enjoin the respondent from enforcing it. In their petition, they alleged, *inter alia,* that they were the owners of various residential rental properties in the city, which were subject to the provisions of Ordinance 7063. They further alleged that they were presently being prosecuted by the respondent in the municipal court for failing to obtain permits in accordance with the ordinance.

On December 17, 1999, the appellants filed a motion for partial summary judgment, wherein they alleged undisputed facts which, they claimed, entitled them to judgment as a matter of law on Counts I through IV of their petition. On December 22, 1999, the respondent filed a motion for summary judgment, alleging that it was entitled to judgment as a matter of law on all five counts of the appellants' petition, based on the following undisputed facts:

5. The amount of money collected by the [respondent] in permit & inspection fees pursuant to Ordinance 7064 [*sic*] from the date of its adoption to the present date was $64,810.00 and the cost of administering the permit & inspection program under the Ordinance during the same period was $92,535.71 . . .

6. The City has never requested a search warrant under Ordinance 7064 [*sic*] and has never prosecuted anyone

for the refusal to permit or consent to an inspection of their rental property [under the ordinance] . . .

 7. The City has issued a variety of Informations against landlords, including some of the [appellants] herein *for the failure and/or refusal to make an initial application for an occupancy permit, or apply for the renewal of a permit,* and has stayed and/or suspended each and every such prosecution while this case is pending . . .

 8. There are only three individuals who have ever performed or attempted to perform any inspections under Ordinance 7063 on behalf of the City . . . and none of them ever have entered, inspected, or attempted to enter or inspect the interior of any rental premises in the City of Moberly, without first having obtained the express consent of the tenant or the owner thereof.

(Emphasis in original.) On January 14, 2000, the respondent filed its response and memorandum in opposition to the appellants' motion for partial summary judgment. The appellants did not file a response to the respondent's motion for summary judgment, conceding below as they do on appeal that there was no dispute as to the material facts alleged by the respondent in its motion. The parties' motions were heard on January 14, 2000.[1] On May 18, 2000, the circuit court entered its judgment denying the appellants' motion for partial summary judgment and sustaining the respondent's motion for summary judgment.

 This appeal follows.

### Standard of Review

 In reviewing the trial court's grant of summary judgment to the respondent,

[o]ur review is essentially *de novo.* The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially. The propriety of summary judgment is purely an issue of law. As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment.

*ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. *banc* 1993) (citations omitted). Summary judgment will be upheld on appeal if: (1) there is no genuine dispute of material fact, and (2) the movant is entitled to judgment as a matter of law. *Id.* at 377.

 In considering an appeal from a summary judgment, we are to

review the record in the light most favorable to the party against whom judgment was entered. Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion. We accord the non-movant the benefit of all reasonable inferences from the record.

*Id.* at 376 (citations omitted).

### Discussion

Under Rule 74.04,[2] to be entitled to sum-

---

**1.** The thirty days allowed under Rule 74.04(c)(2) for the appellants' response to the respondent's motion for summary judgment had not yet elapsed. However, the appellants waived any objection thereto in failing to object at the time and conceding that there was no dispute as to the material facts alleged by the respondent in its motion. *L.A.C. v. Ward*

*Parkway Shopping Ctr. Co.,* No. WD 58111, —— S.W.3d ——, 2001 WL 376347, at *12 (Mo.App. Apr. 17, 2001).

**2.** All rule references are to the Missouri Rules of Civil Procedure (2001), unless otherwise indicated.

mary judgment, the respondent, as the movant, was required to show that: (1) there was no genuine dispute as to the material facts on which it relied for summary judgment; and (2) on these undisputed facts, it was entitled to judgment as a matter of law. Rule 74.04; *ITT Commercial Fin. Corp.*, 854 S.W.2d at 380. With respect to this required showing, if the movant is a defending party, as here, a *prima facie* case for summary judgment may be established by one or more of the following means: (1) showing undisputed facts that negate any one of the claimant's required proof elements; (2) showing that the claimant, after an adequate period of discovery, has not produced and will not be able to produce evidence sufficient to allow the trier of fact to find the existence of any one of the claimant's required proof elements; or (3) showing that there is no genuine dispute as to the existence of each of the facts necessary to support an affirmative defense properly pleaded by the movant. *ITT Commercial Fin. Corp.*, 854 S.W.2d at 381. "Regardless of which of these three means is employed by the 'defending party,' each establishes a right to judgment as a matter of law. Where the facts underlying this right to judgment are beyond dispute, summary judgment is proper." *Id.*

 To succeed on their claim for declaratory relief seeking to invalidate the ordinance, the appellants were required to show: (1) a justiciable controversy, (2) a legally protectable interest, and (3) a question ripe for judicial determination. *Cooper v. State*, 818 S.W.2d 653, 655 (Mo.App. 1991) (citation omitted). "Justiciability contemplates a real, substantial, presently existing controversy admitting of specific relief." *Id.* (citation omitted). "A legally protectable interest involves a pecuniary or personal interest directly in issue or jeopardy, which is subject to some consequential relief, immediate or prospective." *Id.* "Ripeness requires the declaration

sought to present a question appropriate and ready for judicial determination." *Id.* In support of their request for declaratory relief, the appellants, in five separate counts, alleged in their petition that Ordinance 7063 should be declared invalid because: (1) the permit and inspection fee mandated by the ordinance constituted the imposition of a tax without approval of a majority of the qualified voters of the respondent city in violation of the Hancock Amendment; (2) the ordinance authorized unreasonable searches in violation of the Fourth Amendment; (3) the ordinance violated due process in that it required the violation of a tenant's right to privacy; (4) the permit and inspection fee mandated by the ordinance constituted a license tax on a business, which the respondent, as a third-class city, was not authorized to impose; and (5) the respondent's "attempt [under the ordinance] to license, tax, or enjoin the right to rent one's property constitutes a 'taking' of a property right contrary to the 5th Amendment of the U.S. Constitution."

 To be entitled to summary judgment, the respondent, as a defending party, had to demonstrate that, on the undisputed facts alleged and as a matter of law, the appellants were not entitled to the relief requested on any of the five grounds alleged in their petition. *Moreland v. Farren–Davis*, 995 S.W.2d 512, 516 (Mo. App.1999) (citations omitted). This is so in that summary judgment on less than all the grounds pled would not dispose of the entire action such that it would be partial and interlocutory in character, as envisioned in Rule 74.04(c)(3), resulting only in the removal of that ground at trial as a basis for obtaining the relief requested. Rule 74.04(d); *Moreland*, 995 S.W.2d at 516. An appeal does not lie from an order of partial summary judgment. *Robinson v. Mo. State Highway and Transp. Comm'n*, 24 S.W.3d 67, 82 (Mo.App.2000).

In its motion, the respondent employed the first means by which a defending party may establish a *prima facie* case for summary judgment, by alleging undisputed facts which would negate the first required proof element of the appellants' declaratory judgment action, by showing that there was no justiciable controversy as to all five grounds on which the appellants alleged the ordinance should be invalidated.[3]

■ The appellants did not file a response to the respondent's motion such that the alleged undisputed facts of the

3. As to the undisputed facts alleged by the respondent, its motion reads, in pertinent part:

Comes now defendant City of Moberly and for its motion for summary judgment, states that there are no genuine issues with respect to the material facts contained in the following separately numbered paragraphs:

1. Plaintiffs Charles Ashworth, Beth Ashworth, Raymond Kirgan, Carol Kirgan, Keith Botkins, Mary Catherine Botkins, Jim Foster, Judy Foster, June Hoskins, Donald Marshall, Karen Marshall, Douglas Graybill and Connie Graybill (hereinafter collectively referred to as "plaintiffs") allege in their petition that they are owners of residential rental property in the City of Moberly, Missouri . . .

2. Defendant City of Moberly (hereinafter "the City") is a third-class City with a City–Manager form of government, organized under and pursuant to the provisions of §§ 78.430–.640 RSMo[.]

3. In or about September 1996, the City adopted Ordinance # 7063 which sets out housing code requirements [Section 14], and further provides, in pertinent part, that:

(a) it is made unlawful for any person to occupy rental property without an occupancy permit and an occupancy permit must state that a visual inspection of the premises was conducted to ensure compliance with the Code . . .

(b) no person may rent any building or mobile home to any person for dwelling purposes without obtaining occupancy permits when ownership changes and annually . . .

(c) if an owner, occupant or other person in charge of a dwelling or dwelling unit fails or refuses to permit free access and entry to the structure or premises under his control for any inspection, the inspector may apply for a search warrant . . .

(d) when a permit is denied or revoked, no further occupancy of the premises is permitted until a permit is issued . . .

(e) permits must be renewed annually and upon a change of ownership . . .

(f) permits can be suspended or revoked upon a finding that the housing code has been violated . . .

(g) the City may charge application fees for obtaining and renewing permits . . .

(h) any violation of the ordinance is declared to be a nuisance and the City Attorney is empowered to obtain injunctive relief to prohibit continuing violations; and

(i) any person violating any provisions of the ordinance is subject to a fine . . .

4. The City may also charge application fees for obtaining and renewing permits.

5. The amount of money collected by the City in permit & inspection fees pursuant to Ordinance [7063] from the date of its adoption to the present date was $64,810.00 and the cost of administering the permit & inspection program under the Ordinance during the same period was $92,535.71 . . .

6. The City has never requested a search warrant under Ordinance [7063] and has never prosecuted anyone for the refusal to permit or consent to an inspection of their rental property [under] Ordinance [7063] . . .

7. The City has issued a variety of Informations against landlords, including some of the plaintiffs herein for *the failure and/or refusal to make an initial application for an occupancy permit, or apply for the renewal of a permit,* and has stayed and/or suspended each and every such prosecution while this case is pending . . .

8. There are only three individuals who have ever performed or attempted to perform any inspections under Ordinance 7063 on behalf of the City . . . and none of them ever have entered, inspected, or attempted to enter or inspect the interior of any rental premises in the City of Moberly, without first having obtained the express consent of the tenant or the owner thereof. . . .

respondent's motion for summary judgment are deemed to be true. Rule 74.04; *Birdsong v. Christians,* 6 S.W.3d 218, 223 (Mo.App.1999); *Peck v. Alliance Gen. Ins. Co.,* 998 S.W.2d 71, 75 (Mo.App.1999) (citation omitted). Rather, the appellants were content to argue at the motion hearing that on the material facts alleged by the respondent, it was not entitled to judgment as a matter of law. In its judgment, the trial court found that, on the undisputed material facts alleged, the respondent was entitled to judgment as a matter of law, and granted its motion for summary judgment "against [the appellants] on *all* Counts of [the appellants'] Petition." (Emphasis added.) The appellants do not challenge the grant of the respondent's motion as to the grounds they alleged in Counts III and V of their petition. Instead, they claim error in three points only as to the grounds alleged in Counts I, II, and IV of their petition. Thus, our review is limited to determining whether the trial court was correct in finding, as a matter of law, that Ordinance 7063 was not invalid on the grounds alleged by the appellant in those three counts.

### I.

In Point I, the appellants claim that the trial court erred in granting summary judgment to the respondent on their action for declaratory judgment and injunctive relief because it was not entitled to judgment as a matter of law in that, based on the summary judgment record presented, the payment of the permit and inspection fee required by the ordinance constituted a "tax, license or fee" governed by the Hancock Amendment, which was imposed without the requisite approval of a majority of the qualified voters of the respondent city in violation of the Amendment. We disagree.

Mo. CONST. art. X, § 22(a), commonly referred to as the "Hancock Amendment," provides, in pertinent part:

Counties and other political subdivisions are hereby prohibited from levying any tax, license or fees, not authorized by law, charter or self-enforcing provisions of the constitution when this section is adopted or from increasing the current levy of an existing tax, license or fees, above that current levy authorized by law or charter when this section is adopted without the approval of the required majority of the qualified voters of that county or other political subdivision voting thereon.

There is no dispute about the requirements of the ordinance with respect to the levying of the permit and inspection fee in question. The dispute is over whether it was a "tax, license or fee" subject to the Hancock Amendment, such that the enactment of the ordinance without approval of a majority of the qualified voters of the respondent city rendered it invalid. The appellants contend that under the five-factor test of *Keller v. Marion County Ambulance Dist.,* 820 S.W.2d 301 (Mo. banc 1991), the permit and inspection fee is governed by the Amendment, while the respondent contends that it is a user fee which is not subject to the Amendment. The issue then in this point, as framed by the parties, is whether the permit and inspection fee mandated by Ordinance 7063 is a "tax, license or fee" governed by the Hancock Amendment.

In *Keller,* the Marion County Ambulance District (the District) established in January 1989, effective February 1, 1989, a new schedule of charges for its services. 820 S.W.2d at 302. The "charges were for actual services rendered, rather than a subscriber charge of all consumers in the service area." *Id.* Most of the new charges represented increases over the previous charges. *Id.* The new schedule was not submitted to the qualified voters of the district for approval. *Id.* The respondents, a group of taxpayers within the

district, brought a class action challenging the constitutionality of the charges, claiming that the failure to submit the charges to a vote of the people violated the Hancock Amendment. *Id.* The circuit court agreed with the respondents, holding that the charges qualified as "fees" as that term is used in the Amendment. *Id.* On appeal, the Missouri Supreme Court reversed the circuit court, holding that the increases by the District were not subject to the Amendment. *Id.* at 305.

 In holding as it did in *Keller*, the Court rejected the notion that all fees—whether user fees or tax-fees—were subject to the Hancock Amendment, recognizing that revenue increases by local governments fall into two types, those that are subject to the Amendment and those that are not. *Id.* at 303. In this regard, the Court reasoned that the legislature's reference in the Amendment to "tax, license or fees" was a characterization that suggested that "what is prohibited are fee increases that are taxes in everything but name. What is allowed are fee increases which are 'general and special revenues' but not a 'tax.'" *Id.* The Court distinguished between "user fees," not subject to the Amendment, and tax-fees, subject to the Amendment, stating:

> Fees or charges prescribed by law to be paid by certain individuals to public officers for services rendered in connection with a specific purpose ordinarily are not taxes [but user fees] . . . unless the object of the requirement is to raise revenue to be paid into the general fund of the government to defray customary governmental expenditures . . . rather than compensation of public officers for particular services rendered. . . .

*Id.* at 303–04. In determining whether a fee is a user fee or a tax-fee, the Court held that the language of the Amendment required the "courts to examine the substance of a charge, in accordance with this opinion, to determine if it is a tax without regard to the label of the charge." *Id.* at 305. Although the Court, in holding as it did, did not expressly provide a specific test to determine the true nature of the charges, it did suggest, in a footnote, applying the following five-factor test:

1) When is the fee paid?—Fees subject to the Hancock Amendment are likely due to be paid on a periodic basis while fees not subject to the Hancock Amendment are likely due to be paid only on or after provision of a good or service to the individual paying the fee.

2) Who pays the fee?—A fee subject to the Hancock Amendment is likely to be blanket-billed to all or almost all of the residents of the political subdivision while a fee not subject to the Hancock Amendment is likely to be charged only to those who actually use the good or service for which the fee is charged.

3) Is the amount of the fee to be paid affected by the level of goods or services provided to the fee payer?—Fees subject to the Hancock Amendment are less likely to be dependent on the level of goods or services provided to the fee payer while fees not subject to the Hancock Amendment are likely to be dependent on the level of goods or services provided to the fee payer.

4) Is the government providing a service or good?—If the government is providing a good or a service, or permission to use government property, the fee is less likely to be subject to the Hancock Amendment. If there is no good or service being provided, or someone unconnected with the government is providing the good or service, then any charge required by and paid to a local government is probably subject to the Hancock Amendment.

5) Has the activity historically and exclusively been provided by the govern-

ment?—If the government has historically and exclusively provided the good, service, permission or activity, the fee is likely subject to the Hancock Amendment. If the government has not historically and exclusively provided the good, service, permission or activity, then any charge is probably not subject to the Hancock Amendment.

*Id.* at 304–05 n. 10. This test was, however, subsequently expressly adopted and applied by the Court in *Beatty v. Metro. St. Louis Sewer Dist.,* 867 S.W.2d 217 (Mo. *banc* 1993). The Missouri Court of Appeals has followed suit, applying the five-factor *Keller* test to resolve the issue of whether a fee was a "tax, license or fee," subject to the Hancock Amendment. *See Feese v. City of Lake Ozark, Mo.,* 893 S.W.2d 810, 812 (Mo. *banc* 1995); *Avanti Petroleum, Inc. v. St. Louis County,* 974 S.W.2d 506, 509–11 (Mo.App.1998); *Mo. Growth Ass'n v. Metro. St. Louis Sewer Dist.,* 941 S.W.2d 615, 622–24 (Mo.App. 1997); *Home Builders Ass'n of Greater St. Louis v. City of St. Peters,* 868 S.W.2d 187, 190–91 (Mo.App.1994). Thus, pursuant to controlling case law, we will apply the *Keller* test in determining the issue presented here. In doing so, we are to "consider each … factor individually and weigh in favor of either the citizen or the political subdivision." *Avanti Petroleum, Inc.,* 974 S.W.2d at 511 (citation omitted). "Where an application of the *Keller* factors creates genuine doubt as to whether the charges constitute a 'tax, license or fee' covered by the Hancock Amendment, we resolve the uncertainty in favor of requiring voter approval." *Id.* (*citing Beatty,* 867 S.W.2d at 221).

### 1. When is the Fee Paid?

 When is the fee paid?—Fees subject to the Hancock Amendment are likely due to be paid on a periodic basis while fees not subject to the Hancock Amendment are likely due to be paid only on or after provision of a good or service to the individual paying the fee. *Keller,* 820 S.W.2d at 304–05 n. 10. As to this factor, the appellants contend that the permit and inspection fee mandated by Ordinance 7063 is to be paid on a periodic basis in that it requires payment with one's initial application for a permit and "thereafter on an annual basis or a change of ownership." The respondent counters that "[t]he fact that initial application and change of ownership are events that could happen at any time, shows that this is not a tax under the Hancock Amendment," and that "[e]ven the fees paid at annual renewals are due and payable only where the dwellings continue to be occupied and if the property owner applies for an inspection."

 As noted in *Beatty,* the "question posed [in the first factor] is not whether the political subdivision provides a service but the regularity with which the fee is paid." 867 S.W.2d at 220. The focus then of the first factor is the regularity of payment of the fee by those required to pay it. Thus, the fact that with respect to any given landlord, depending on the circumstances, there might not be a fee due and owing on an annual basis would not change the analysis as to the regularity of the payment. Assuming that a landlord continues to rent a qualified unit under the ordinance, the fact remains that he or she will be subject to the *annual* permit and inspection fee, which would seem to us to more closely resemble a "periodic payment" rather than a fee "to be paid only on or after provision of a good or service to the individual paying the fee." Accordingly, we resolve this factor in favor of the appellants.

### 2. Who Pays the Fee?

Who pays the fee?—A fee subject to the Hancock Amendment is likely to be

blanket-billed to all or almost all of the residents of the political subdivision while a fee not subject to the Hancock Amendment is likely to be charged only to those who actually use the good or service for which the fee is charged. *Keller*, 820 S.W.2d at 304–05 n. 10. As to the second factor, the appellants, while conceding that the "permit and inspection" fee applies to *all* owners of rental properties, "so it was specific," claim that "there was no good or service being provided by [the respondent] as a consideration for any type of payment." The appellants contend that "[t]he inspections were not a service but rather a new prerequisite invented by the [respondent] to preclude owners of rental units from renting their property without first paying the [respondent] a 'cut.'" For its part, the respondent argues that the fee is limited only to the owners of non-owner occupied rental properties, and is not, therefore, "blanket-billed."

While the appellants concede that the permit and inspection fee was not blanket-billed, they nonetheless contend that this factor weighs in their favor because the fee was not being paid in return for a good or service. That argument confuses the focus of the second factor with the focus of factor four, which is whether a good or service is being provided. As to the second factor, we believe it favors the respondent in that the fee was specific, not blanket, in nature, as the appellants concede.

### 3. Is the Amount of the Fee to be Paid Affected by the Level of Goods or Services Provided to the Fee Payer?

Is the amount of the fee to be paid affected by the level of goods or services provided to the fee payer?—Fees subject to the Hancock Amendment are less likely to be dependent on the level of goods or services provided to the fee payer while fees not subject to the Hancock Amendment are likely to be depen-dent on the level of goods or services provided to the fee payer.

*Id.* The appellants concede in their brief that the "inspection fees do directly correlate with the inspections" provided. However, they again assert the argument they made as to factor two, that the mandatory inspections were not a good or service, but "a newly created requirement to generate income for the city." Inasmuch as the focus of this factor is whether the fees in question are dependent on the level of goods or services provided, not the nature of the promoted goods or services, the argument is misplaced. As the respondent points out: "The ... *amount* of the fee is dependent upon two major factors: the size or type of the dwelling and whether the dwelling passes inspection. If the premises fails inspection due to not meeting the requirements of the City's housing code, the landlord is subject to a re-inspection fee. Every time the property is inspected, another fee of $20.00 is due." (Emphasis in original.) We find that this factor favors the respondent.

### 4. Is the Government Providing a Service or Good?

Is the government providing a service or good?—If the government is providing a good or a service, or permission to use government property, the fee is less likely to be subject to the Hancock Amendment. If there is no good or service being provided, or someone unconnected with the government is providing the good or service, then any charge required by and paid to a local government is probably subject to the Hancock Amendment.

*Id.* In contending that the respondent was not providing a good or service, the appellants assert:

The City of Moberly has implemented a fee for something that was previously

free. The owners rented out their units before the enactment of the ordinance without paying any of their profits to the city. Now, the City is charging a fee for an activity that was already going on free of charge. There is no new good or service being provided by the City. Rather, a new tax has been imposed on an old, previously unrestricted activity: renting.

The respondents contend that the fees charged were in return for a service being provided—the service being inspections to ensure a safe environment for tenants. In this regard, the respondent asserts: "There is no question that the City is providing a service by inspecting the rental premises occupied by tenants in the city. Contrary to [the appellants'] unsupported assertion, the service is clearly not a device for municipal revenue enhancement."

In *Home Builders Ass'n of Greater St. Louis v. City of St. Peters*, 868 S.W.2d 187, 190 (Mo.App.1994), the court was called upon to decide whether the enactment of an ordinance, without a vote, requiring a one-time trust fund payment by city real estate developers of $2,000, violated the Hancock Amendment. The fund was created to "defray the costs associated with potential litigation to enforce the covenants and restrictions" imposed on a city development. *Id.* To enforce the payment, the ordinance provided that "plat approval" of a development or developments of the offending developer would be withheld until payment was made to the trust fund. *Id.* In applying the fourth factor of the *Keller* test, the court determined that plat approval by the city was a government service that was to be provided upon the developer's required payment to the trust fund, which was consistent with the payment of a user fee, not a tax fee. *Id.* Thus, the court found that although the plat approval was only necessary due to government regulation of real estate development within the city, that fact did not

change the fact that it was a service for purposes of the *Keller* test. *Id.* Similarly, the fact that in our case the inspections being performed by the respondent are mandated by the ordinance would not change the fact that the respondent is providing a service in return for the permit and inspection fee charged.

■ The appellants' argument that the respondent's inspection of a rental unit under the ordinance was not a service also fails to take into account what the Supreme Court stated in *Keller*:

Fees or charges prescribed by law to be paid by certain individuals to public officers for services rendered in connection with a specific purpose ordinarily are not taxes [but user fees] . . . unless the object of the requirement is to raise revenue to be paid into the general fund of the government to defray customary governmental expenditures . . . rather than compensation of public officers for particular services rendered. . . .

820 S.W.2d at 303–04. Here, it is undisputed that the permit and inspection fee was not imposed to generate revenue for the general fund. In fact, it is undisputed that the inspection program was a drain on the general fund in that the fees charged failed to generate enough money to pay for the cost of the inspection program.

For the reasons stated, we find that factor four favors the respondent.

### 5. Has the Activity Historically and Exclusively Been Provided by the Government?

■ Has the activity historically and exclusively been provided by the government?—If the government has historically and exclusively provided the good, service, permission or activity, the fee is likely subject to the Hancock Amendment. If the government has not historically and exclusively provided the good,

service, permission or activity, then any charge is probably not subject to the Hancock Amendment.

*Id.* at 304–05 n. 10. The stated purpose of Ordinance 7063, "is to protect the public health, safety and general welfare of the people in the City in non-owner occupied dwellings. . . ." A "regulation for the public health is historically a governmental function." *Avanti*, 974 S.W.2d at 511. This factor then would cut in favor of the appellants.

Having found, on the summary judgment record presented, that three of the five *Keller* factors favor the respondent, we conclude that the trial court did not err in finding that, as a matter of law, the permit and inspection fee imposed by Ordinance 7063 was a user fee not subject to the Hancock Amendment. That does not end our inquiry, however, inasmuch as discussed, *supra*, the respondent would not have been entitled to summary judgment unless it could demonstrate that the ordinance was not invalid on any ground pled by the appellants. *Moreland*, 995 S.W.2d at 516.

## II.

In Point II, the appellants claim that the "trial court erred in granting the City of Moberly's motion for summary judgment in that Moberly was not entitled to judgment as a matter of law because a third class city does not have the authority to levy taxes on non-residential owners of rental properties." In this claim, the appellants are contending that the permit and inspection fee of Ordinance 7063 is a license tax on a business for which the respondent lacked any statutory authority

to levy. In this regard, the appellants cite § 71.610,[4] which provides:

No municipal corporation in this state shall have the power to impose a license tax upon any business, avocation, pursuit or calling, unless such business, avocation, pursuit or calling is specially named as taxable in the charter of such municipal corporation, or unless such power be conferred by statute.

The respondent does not dispute the fact that it could not levy a license tax without statutory authority, but argues that the purpose of Ordinance 7063 was not to levy a license tax, but was simply a proper exercise of its police powers, under § 77.260 and § 77.590, to establish minimum standards of housing within the city.

The appellants' claim, as expressly stated in their point relied on, necessarily assumes that the fee imposed by the ordinance is a tax. We, of course, have already determined in Point I, *supra*, that the trial court was correct in finding, as a matter of law, that the fee was not a tax, but a user fee. As such, the specific attack of the appellants in this point is without merit.[5]

Point denied.

## III.

In Point III, the appellants claim that the trial court erred in granting summary judgment to the respondent because it was not entitled to judgment as a matter of law in that based on the summary judgment record presented, Ordinance 7063 "promotes" warrantless searches of the appellants' properties in requiring annual inspections of their rental units prior to the

---

**4.** All statutory references are to RSMo 2000, unless otherwise indicated.

**5.** In their argument of the point relied on, the appellants, in addition to their tax argument, also appear to argue that the respondent

lacked any statutory authority to regulate the rental of non-owner occupied units. However, we will not address questions raised in the argument, but not raised in the point relied on. Rule 84.04(e); *Nelson v. Nelson*, 25 S.W.3d 511, 524 (Mo.App.2000).

issuance of the necessary permits allowing them to be rented, "in violation of the Fourth Amendment of the United States Constitution and Article I, Section 15 of the Missouri Constitution." Specifically, the appellants contend that the ordinance violates the Fourth Amendment and § 15 of the Missouri Constitution in that it "coerces" an owner of a covered rental unit into consenting to an inspection in order to be issued a permit, without which the owner may not lawfully rent the unit, and that, as such, it promotes warrantless nonconsensual searches. We disagree.

The Fourth Amendment of the United States Constitution preserves the right of individuals to be free from unreasonable searches and seizures. *State v. Tackett*, 12 S.W.3d 332, 337 (Mo.App.2000). Its "prohibition against unreasonable searches and seizures is enforceable against the states through the due process clause of the Fourteenth Amendment." *State v. Toolen*, 945 S.W.2d 629, 631 (Mo. App.1997) (*citing State v. Burkhardt*, 795 S.W.2d 399, 404 (Mo. *banc* 1990)). Missouri's constitutional guarantee against unreasonable searches and seizures, found in Mo. CONST. art. I, § 15, is coextensive with that of the Fourth Amendment. *State v. Hernandez*, 954 S.W.2d 639, 642 (Mo.App. 1997) (citation omitted). "Unless a search falls within certain narrowly defined exceptions, the general rule is that any search or seizure without a warrant based upon probable cause is *per se* unlawful." *State v. Metz*, 43 S.W.3d 374, 382 (Mo.App. 2001) (citation omitted). "One such exception to the warrant requirement is a search conducted pursuant to valid consent." *Id.* (*citing State v. Leavitt*, 993 S.W.2d 557, 563 (Mo.App.1999)).

"Entries onto private property by government officials, like searches pursuant to a criminal investigation, are governed by the warrant requirement of the Fourth Amendment." *Bezayiff v. City of St. Louis*, 963 S.W.2d 225, 232 (Mo.App. 1997) (*citing Camara v. Mun. Court of San Francisco*, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967); *Michigan v. Tyler*, 436 U.S. 499, 504–08, 98 S.Ct. 1942, 1947–49, 56 L.Ed.2d 486, 494–98 (1978); *Michigan v. Clifford*, 464 U.S. 287, 291–92, 104 S.Ct. 641, 646, 78 L.Ed.2d 477, 483 (1984)). Likewise, seizures of residential property in the civil context by government officials are governed by the Fourth Amendment. *Id.* (citations omitted). The "basic purpose of this Amendment ... is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Camara*, 387 U.S. at 528, 87 S.Ct. at 1730, 18 L.Ed.2d at 935. "The officials may be health, fire, or building inspectors. Their purpose may be to locate and abate a suspected public nuisance, or simply to perform a routine periodic inspection ... These deviations from the typical police search are thus clearly within the protection of the Fourth Amendment." *Michigan*, 436 U.S. at 504–505, 98 S.Ct. at 1947, 56 L.Ed.2d at 495.

A municipal ordinance authorizing a search of property in a civil context does not violate the Fourth Amendment, providing it does not authorize a search or seizure to be done without the consent of the owner or without the issuance of a warrant. *Bezayiff*, 963 S.W.2d at 234–35. In that regard, § 15 of Ordinance 7063 provides:

(1) The Inspector, as defined shall enforce the provisions of this ordinance and is thereby authorized to make inspections on a scheduled basis or when reason exists to believe that violation of this ordinance has been or is being committed:

(2) Inspection access: If any owner, occupant or other person in charge of a dwelling or a dwelling unit fails or refuses to permit free access and entry to

the structure or premises under his control for any inspection pursuant to this ordinance the inspector may *seek a search warrant or other appropriate court order authorizing such inspections.*

(Emphasis added.) The respondent concedes that the ordinance does not authorize it to conduct an inspection of a rental unit without the consent of the landlord or a search warrant being issued. The respondent reads the ordinance as requiring it to obtain a warrant to inspect when a landlord refuses to consent to an inspection of a covered unit. As such, the appellants and the respondent are in complete agreement that the respondent has no authority under the ordinance to conduct nonconsensual and warrantless inspections of covered rental units. However, the appellants contend that despite this fact the ordinance, in effect, still violates the Fourth Amendment because a landlord has no choice but to consent and submit to an inspection or forgo renting the unit.

Even accepting the fact that there is a forced choice under the ordinance, the appellants' contention that it promotes warrantless searches still must fail. This is so in that the United States Supreme Court held in *Wyman v. James,* 400 U.S. 309, 325, 91 S.Ct. 381, 390, 27 L.Ed.2d 408, 418 (1971), distinguishing *Camara,* that the issue in determining whether the ordinance violates the Fourth Amendment is not whether a "negative choice" results under the ordinance in choosing not to consent to an inspection, as the appellants contend, but whether the subsequent prosecution of the individual is for his or her refusal to consent thereto. Here, the record is undisputed that the landlords were being prosecuted not for failing to consent to the required inspection, but for failing and/or refusing to make an initial application for a rental permit or apply for the renewal of a permit under the ordinance—a "negative choice" situation referenced in *Wyman.*

Thus, the ordinance, as enforced by the respondent, cannot be read as "promoting" warrantless searches in violation of the Fourth Amendment, as the appellants contend.

Point denied.

### Conclusion

The summary judgment of the circuit court for the respondent and against the appellants in their action for declaratory judgment and injunctive relief, seeking to invalidate Ordinance 7063 and enjoin the respondent from enforcing it, is affirmed.

ULRICH, P.J., and NEWTON, J., concur.