David BEZAYIFF, Plaintiff/Respondent,

v.

CITY OF ST. LOUIS,
Defendant/Appellant.

No. 71824.

Missouri Court of Appeals,
Eastern District,
Division Two.

Nov. 4, 1997.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Feb. 9, 1998.

Application for Transfer Denied
March 24, 1998.

Eric Kendall Banks, Steven R. Wild, St. Louis, for defendant/appellant.

David Bezayiff, St. Louis, for plaintiff/respondent.

RHODES RUSSELL, Judge.

The City of St. Louis ("City") appeals from an order and judgment reversing a decision of the St. Louis Board of Public Service to tow a vehicle from private property pursuant to municipal ordinance 60935.[1] The trial court enjoined the City and its agents from entering private property pursuant to a municipal ordinance for the purpose of removing any disabled automobile without first obtaining the consent of the owner of the property or obtaining a warrant. The City also appeals the trial court's order and judgment declaring unconstitutional a portion of the ordinance. We affirm in part and reverse in part.

David Bezayiff ("Respondent") was the owner of a 1979 Pontiac Trans Am and a GMC pickup truck. Respondent kept these vehicles parked in his backyard on a paved surface. On June 27, 1995, the Director of the Department of Streets ordered both vehicles removed under Ordinance 60935, as both vehicles were not able to be immediately operated or were a public safety hazard.

Respondent appealed the removal orders to the Board of Public Service ("Board") pursuant to Ordinance 60935 and section 536.063 RSMo 1994. On July 12, 1995, the Board determined that respondent's vehicles were in violation of Ordinance 60935 because both vehicles were inoperable. Later, the Board reheard the matter with respondent present and issued its findings of fact and conclusions of law. The Board found the GMC pickup to be operable, but found the Trans Am to be inoperable since it had not been started for a few years. The Board also found that the Trans Am was not completely enclosed in a fenced area because there were gaps in respondent's fence. The Board further found that the Trans Am was visible from a public and private property, and that the vehicle was not used in connection with the business of a licensed salvage, scrap or junk dealer. In its conclusions of law, the Board determined that respondent had not violated Ordinance 60935 with respect to his GMC pickup, but determined that he had violated the ordinance with respect to the Trans Am. The Board ordered respondent to remove the Trans Am within seven days. If respondent failed to remove the vehicle within seven days, the Board stated that the Director of Streets would remove it pursuant to Ordinance 60935.

Respondent appealed the final decision of the Board to remove the Trans Am to the Circuit Court of the City of St. Louis. In his petition for injunction and administrative review[2], respondent stated that he felt that the ordinance violated his Fourth Amendment right to be free from unreasonable seizures. Respondent also challenged the ordinance's constitutionality by stating that it violated his Fourteenth Amendment right that "[n]o state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor deny to any person within its jurisdiction the equal protection of the laws." Respondent's petition did not challenge the factual findings of the Board. Respondent requested the trial court

---

1. Ordinance 60935 is codified at St. Louis, Mo., Revised Code ch. 17.56 (1994). The ordinance is entitled "VEHICLE TOWING CODE."

2. Respondent's petition filed in the trial court was denominated a petition for injunction and administrative review. The petition was treated by the court and the parties as a petition for review under the Administrative Procedure Act, section 536.100 et seq. RSMo 1994.

to issue an injunction to prevent the City from removing his vehicle and he also asked for the matter to be tried by a jury.

On December 10, 1996, the trial court issued its amended memorandum, order and judgment. The trial court reversed the Board's decision dated August 8, 1995, and enjoined the City and its agents from entering private property pursuant to Ordinance 60935 for the purpose of removing any disabled automobile without first obtaining the consent of the property owner or obtaining a lawful warrant. The trial court held that Section Three, subsection 9 of Ordinance 60935; R.C. section 17.56.20.B.9, and Section Twenty–Three, to the extent it incorporated the provisions of Section Three B 9, were unconstitutional in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

The trial court held that Ordinance 60935 authorized two actions which violated the liberty and property rights protected by the Fourth and Fourteenth Amendments.

First, the ordinance authorized the City and its agents to enter a person's property, without a warrant, to seize disabled automobiles. The court noted that the City had not violated the Fourth Amendment by seizing respondent's automobile because respondent's automobile was never removed from his property. However, the court stated that the issue was the constitutionality of an ordinance which empowered a bureaucrat to seize an automobile from private property without a warrant. The trial court explained that after the time for an administrative appeal had expired, or an administrative appeal had been rejected, the ordinance purported to authorize City officials to remove respondent's automobile from his property without a warrant. Thus, according to the court, even if respondent's vehicle had been properly found to be inoperable under the ordinance, the vehicle could not be seized from his premises without a judicial warrant.

The trial court also found that the ordinance violated the Fourteenth Amendment in that the ordinance worked to deprive the owner of property without due process of law. By condemning the mere possession of a disabled automobile by a property owner, in the absence of proof that the automobile was in fact hazardous to the public, the court reasoned that the ordinance was arbitrary, capricious, and unreasonable, and deprived the owner of property without just compensation.

In its first point, City contends that the trial court erred in holding that the ordinance lacks a reasonable relationship to a legitimate government end because the ordinance bears a reasonable relationship to numerous government ends. We agree.

Section Three, subsection B.9 of Ordinance 60935, St. Louis, Mo., Revised Code section 17.56.20.B.9 (1994) provides:

B. Non-emergency removal.

and whenever:

9. Any vehicle on private land does not operate or is in such a condition as to constitute a public safety hazard, whether it does or does not have license plates currently registered to that vehicle, except;

a. A vehicle which is completely enclosed within a building or fenced area so as to not constitute a hazard to children and which is not visible from the public street or other public or private property;

b. A vehicle or part thereof which is standing or parked in a lawful manner on private property in connection with the business of a licensed salvage, scrap or junk dealer;

such vehicle or vehicle parts or part of a vehicle may be removed subject to the provisions of this ordinance, codified as Sections 17.56.030 and 17.56.040. The police department or director of streets through their agents or contractors are vested with the discretion to determine what constitutes an illegally parked vehicle, abandoned vehicle or abandoned vehicle part (of a vehicle) according to this section.

Thus, the ordinance authorizes the removal of any automobile "on private land [which] does not operate or is in such a condition as to constitute a public safety hazard," unless the automobile is completely enclosed within

a building or fenced area so as to be invisible to anyone outside the property.

Addressing the reasonableness of the ordinance, the court stated that it agreed that the city has the power to condemn or abate hazardous conditions, if the property owner was afforded procedural due process. If the ordinance were limited to inoperable automobiles, which were hazardous in fact, the court commented that it did not quarrel with the substance of the ordinance. However, the court found that the command of the ordinance that inoperable automobiles be invisible was purely arbitrary and bore no reasonable relationship to the promotion of the public health, safety, and welfare.

■■■ The purpose of police power is to promote the public health, safety, and welfare. *Home Builders Ass'n v. City of St. Peters,* 868 S.W.2d 187, 189 (Mo.App.1994). Although not unlimited, a municipality's police power is very broad. *Id.* The test of whether an ordinance is fairly referable to a legitimate exercise of police power is whether the expressed requirements of the ordinance have a substantial and rational relationship to the health, safety, peace, comfort, and general welfare of the inhabitants of the municipality. *Schnuck Markets, Inc. v. City of Bridgeton,* 895 S.W.2d 163, 166 (Mo.App. 1995). An ordinance enacted pursuant to the valid police power of a municipality is presumed valid, and the party challenging the ordinance bears the burden of proving its invalidity. *Id.* The burden is on the party contesting the ordinance to negate every conceivable basis which might support it. *Dean Taylor Cadillac–Olds v. Thompson,* 871 S.W.2d 5, 7 (Mo.App.1993). If reasonable minds might differ as to whether a particular ordinance has a substantial relationship to the protection of the general health, safety, or welfare of the public, then the issue must be decided in favor of the ordinance. *See, Schell v. Kansas City,* 360 Mo. 27, 226 S.W.2d 718, 719 (1950).

■■■ Here, the City was concerned about inoperable automobiles being a hazard to children and being an eyesore to the community. General welfare accommodates the concept that an environment free from unsightliness and other visual intrusion enhances life and is a value that the police power will protect. *City of Independence v. Richards,* 666 S.W.2d 1, 7 (Mo.App.1983); *See also, BBC Fireworks, Inc. v. State Highway and Transp. Com.,* 828 S.W.2d 879, 882 (Mo.1992). City also argues that inoperable vehicles are generally in worse repair than operable vehicles, and therefore, carry a higher potential for broken parts with sharp edges, are more likely to leak hazardous substances, and are more likely to harbor vermin.

Other jurisdictions have upheld similar ordinances as a valid exercise of the city's police powers.[3] In *Price v. Junction,* 711 F.2d 582 (5th Cir.Tex.1983), a city ordinance allowed the removal of junked vehicles from public or private property. A junked vehicle was defined as any inoperative vehicle which had both an expired license plate and an invalid safety inspection certificate. *Id.* at 586–87. However, the ordinance provided that vehicles which were completely enclosed in buildings and not visible from public or private property were not subject to removal. *Id.* at 587. The Fifth Circuit held that the ordinance was a valid exercise of the city's police powers in that the city was concerned about junk cars being a fire hazard; an attractive nuisance to children; a liability in encouraging tourist trade; and an eyesore. *Id.* at 588. According to the Fifth Circuit, not only did the ordinance further an aesthetic goal (by eliminating the accumulation of "junky cars"on private and public lands), but also furthered the health, safety, and welfare interests of the city's residents. *Id.* at 589.

In *Radcliff v. City of Berwyn,* 129 Ill. App.3d 70, 84 Ill.Dec. 348, 350, 472 N.E.2d 98, 100 (1st Dist.1984), a city ordinance which made it unlawful "to park or store any inoperable, junk vehicle, or relic, vintage, or antique vehicle not regularly used for transportation upon private land," was found to be a proper exercise of the city's police power.

**3.** *See,* 7A *McQuillen Municipal Corporations,* Sec. 24.628 (3rd ed. 1989) (A city has the power to prohibit the keeping, storing, and maintaining of automobiles not in operable condition on private property).

The ordinance prohibited the parking of inoperable vehicles upon open private land. *Id.* The term "open private land" was defined by the ordinance as "an area of land not enclosed by a garage or carport." *Id.* The Illinois appellate court found that the city had the power to prohibit the keeping, storing, and maintaining of inoperable motor vehicles on private property. *Id.* The court noted that the ordinance promoted the health and safety of the city's inhabitants by eliminating the unsightly nature of most inoperable equipment and by reducing the attractiveness to rats and other vermin. *Id.*

Here, the trial court found that the ordinance's requirement, that an inoperable vehicle be completely enclosed within a building or fenced area as so not to be visible from public or private property, was purely arbitrary and bore no reasonable relationship to the promotion of the public health, safety, and welfare. However, the ordinances in both *Price* and *Radcliff* required inoperable vehicles to be completely enclosed in buildings so as not to be visible from public or private property, *Price,* 711 F.2d at 587, or be enclosed by garage or carport, *Radcliff,* 84 Ill.Dec. at 350, 472 N.E.2d at 100. The requirement that an inoperable vehicle be enclosed within a building or fenced area furthers the city's health, safety, and aesthetic goals, and therefore, furthers a significant and proper government interest. We find the ordinance to be a proper use of the City's police powers.

In its second point, the City contends that the trial court erred and exceeded its jurisdiction by ruling that the ordinance was invalid on the basis of due process and taking without just compensation under the United States Constitution and Missouri Constitution since respondent had not specifically pled those issues. We agree.

The trial court stated that it agreed that the Board had the power to condemn or abate a hazardous condition, if the property owner was afforded procedural due process. The trial court found that the ordinance authorized the forfeiture of an automobile without compensation, and that this action worked to deprive the owner of his property without due process of law. The trial court,

relying on both the United States and Missouri Constitutions, also found that the ordinance deprived the owner of his property without just compensation. Based on its analysis, the trial court found that the ordinance violated the Fourteenth Amendment of the United States Constitution.

Respondent's petition, however, only raised three constitutional issues: 1) unreasonable seizure; 2) privileges or immunities; and, 3) equal protection under the laws. Nowhere in his petition did respondent state that the ordinance deprived him of his property without due process of law or that it deprived him of his property without just compensation. In his petition, respondent stated:

> I stated at the hearing before the board I felt the ordinance violated my 4th Amendment right to unreasonable seizure. I also feel this ordinance to be in violation of my 14th Amendment right, "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States. Nor deny to any person within its jurisdiction the equal protection of the Laws."

The constitutionality of an ordinance is within the permissible scope of judicial review of an administrative decision. Section 536.140.2(1) RSMo 1994; *Fitzgerald v. City of Maryland Heights,* 796 S.W.2d 52, 58 (Mo.App.1990). However, there are four mandatory prerequisites to preserving a constitutional issue for review after an administrative decision. The party challenging the constitutionality of an ordinance or a statute must: 1) raise the question at the first opportunity; 2) designate specifically the constitutional provision claimed to have been violated, such as by explicit reference to the article and section or by quotation of the provision itself; 3) state facts showing such violation; and 4) preserve the constitutional question throughout for appellate review. *Fitzgerald,* 796 S.W.2d at 58. If a party fails to assert his constitutional claim in his petition for review to the circuit court, it is not preserved for appeal. *Collier v. Metropolitan St. Louis Sewer District,* 706 S.W.2d 894, 898 (Mo.App.1986). Judicial review of an administrative decision is conducted "upon

the petition and record filed." Section 536.140.1. Circuit and appellate court review of administrative decisions is, therefore, limited to matters raised in the petition for review. *Fitzgerald*, 796 S.W.2d at 58.

In *Perez v. Webb*, 533 S.W.2d 650, 655 (Mo.App.1976), the trial court below held that a provision of a municipal ordinance regarding the licensing of alcoholic beverages was unconstitutional in that it violated Article I, section 10, of the Missouri Constitution, and the Fourteenth Amendment of the United States Constitution. On appeal, the Western District found that the trial court erred in considering constitutional issues as to the constitutionality of the ordinance in that respondent had failed to preserve such issues. *Id.* at 656. Noting that a trial court cannot search, *sua sponte*, for constitutional infirmities not put forward by the parties, the Western District stated:

> With few exceptions, the forte of any court is to relegate itself to limbo until presented proper pleadings to be employed as vehicles for judicial locomotion. Even in matters over which a court has general jurisdiction, it cannot, ex mero motu set itself in motion nor have power to determine questions unless they are presented to it in the manner and form prescribed by law.

*Id.* (quoting *State ex rel. Houser v. Goodman*, 406 S.W.2d 121, 126 (Mo.App.1966)). Thus, when a constitutional issue has not been raised, a declaration of the invalidity of a statute or ordinance on such a basis by a circuit court is erroneous and should be reversed. *See, Callier v. Director of Revenue*, 780 S.W.2d 639, 641 (Mo.1989).

The relevant part of respondent's petition for review has been noted. The petition contained no designation to any specific constitutional section that the ordinance deprived him of his property without due process of law or that it deprived him of his property without just compensation. Respondent's petition did not specifically designate the Due Process Clause of the Fourteenth Amendment, nor did it set forth the Fifth Amendment or Article I, section 26 of the Missouri Constitution. Further, respondent's petition pled no facts showing how the ordinance violated his Due Process rights or that it deprived him of his property without just compensation. Respondent failed to raise the constitutional issues of due process or taking without just compensation in his petition for review, and thus should not have been considered by the trial court.

We reverse the trial court's judgment insofar as it held that the ordinance violated respondent's Fourteenth Amendment rights to procedural due process or that the ordinance deprived him of property without just compensation.

In its third point, the City maintains that the trial court erred in holding that the ordinance permits unreasonable seizures within the meaning of the Fourth Amendment because no seizures are permitted without notice, a right to a hearing, a right to judicial review, and an opportunity to abate. According to the City, the fact that a vehicle can be seized by an official without a warrant if an owner is unsuccessful in his appeal does not offend the Fourth Amendment's warrant requirement since the ordinance affords an owner much more protection than a simple warrant. The City argues that a warrant normally issues upon an ex parte showing of probable cause. However, under the ordinance, a property owner is allowed to participate in a full evidentiary hearing to determine whether the vehicle violates the ordinance. Thus, unlike the usual ex parte process for a warrant, owners of inoperable vehicles under the ordinance are allowed to present their position before the vehicle is towed. We disagree.

Under the ordinance, an inoperable vehicle found in violation of section 17.56.020.B9 may be removed by the police or by the Director of Streets. 17.56.030; 17.56.040. Further, section 17.56.050 provides that:

> Whenever the Director of Streets shall find upon any parcel of land a condition existing in the violation of Section 17.56.020 B9 or 10, he shall forthwith order such owner of such parcel of land to abate such condition forthwith by serving a notice of demand on the owner, to remove the same within seven (7) days of receipt of such notice. Should the said owner refuse or fail to abate such condition as set forth

in the notice within such seven (7) day period or fail to appeal the order of the Director of Streets within such seven (7) day period, the Director of Streets is hereby authorized and directed to remove or cause to be removed such vehicle or parts from the land at the cost and expense of the owner of the parcel of land.

The Fourth Amendment, made applicable to the States by the Fourteenth Amendment, *Ker v. California,* 374 U.S. 23, 30, 83 S.Ct. 1623, 1628, 10 L.Ed.2d 726 (1963), provides that:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Entries onto private property by government officials, like searches pursuant to a criminal investigation, are governed by the warrant requirement of the Fourth Amendment. *Camara v. Municipal Court of San Francisco,* 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967); *Michigan v. Tyler,* 436 U.S. 499, 504–508, 98 S.Ct. 1942, 1947–1949, 56 L.Ed.2d 486, 494–498 (1978); *Michigan v. Clifford,* 464 U.S. 287, 291–92, 104 S.Ct. 641, 646, 78 L.Ed.2d 477, 483 (1984). The Supreme Court in *Camara* stated that the "basic purpose of this Amendment . . . is to safeguard the privacy and security of individuals against arbitrary invasions by government officials." 387 U.S. at 528, 87 S.Ct. at 1730. "The officials may be health, fire, or building inspectors. Their purpose may be to locate and abate a suspected public nuisance, or simply to perform a routine periodic inspection. These deviations from the typical police search are thus clearly within the protection of the Fourth Amendment." *Michigan v. Tyler,* 436 U.S. at 504–505, 98 S.Ct. at 1947.

The protection against unreasonable searches and seizures fully applies to the seizure of residential property in the civil context. *Soldal v. Cook County,* 506 U.S. 56, 67, n. 11, 113 S.Ct. 538, 546, n. 11, 121 L.Ed.2d 450 (1992). Except in certainly defined classes of cases, the Fourth Amendment requires that the state must have a valid warrant to effectuate a seizure. *See, Cady v. Dombrowski,* 413 U.S. 433, 439, 93 S.Ct. 2523, 2527, 37 L.Ed.2d 706 (1973); *Camara,* 387 U.S. at 528–29, 87 S.Ct. at 1730–31. A seizure is defined as a "meaningful interference with an individual's possessory interests in that property." *Soldal,* 506 U.S. at 61, 113 S.Ct. at 543.[4]

In *G.M. Leasing Corp. v. United States,* 429 U.S. 338, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977), the Internal Revenue Service (IRS), having investigated the income tax of a taxpayer, determined that the taxpayer owed back taxes for two years. Since the taxpayer failed to file proper returns and was a fugitive at law, the IRS made jeopardy assessments pursuant to section 6861(a) of the Internal Revenue Code of 1954. The IRS then made warrantless seizures of the taxpayer's automobiles which were located on public streets and on a parking lot. The IRS further entered the taxpayer's cottage, without a warrant, and seized his books, records, and other property. *Id.* at 341–46, 97 S.Ct. at 623–25.

The taxpayer filed suit asserting that the IRS violated his Fourth Amendment rights to be free from unreasonable searches and seizures. The United States Supreme Court approached the case by accepting that the assessments made by the IRS were valid and that there was probable cause to believe that the assets held by the taxpayer were properly subject to seizure in satisfaction of the assessments. *Id.* at 351, 97 S.Ct. at 628. Thus, the issue before the Supreme Court was whether warrants were required to make reasonable either the seizure of the vehicles or the entry into and seizure of the property in the cottage. *Id.*

**4.** In *Soldal,* the Supreme Court held that the towing away of a mobile home was a seizure

invoking protection of the Fourth Amendment.

Addressing the warrantless seizure of the automobiles, the Court noted that since the seizure of the vehicles took place on public streets, parking lots, or other open places, the seizures did not involve any invasion of privacy. *Id.* The Court held that the warrantless seizures of the automobiles were, therefore, not unconstitutional. *Id.* at 352, 97 S.Ct. at 628. However, the Court held that the warrantless seizure of the books and records involved an intrusion into the privacy of the taxpayer's cottage. *Id.* The Court, holding that the warrantless entry into the taxpayer's cottage and seizure of his property violated the Fourth Amendment, stated:

> It is one thing to seize without a warrant property resting in an open area or seizure by levy without an intrusion into privacy, and it is quite another thing to effect a warrantless seizure of property ... situated on private premises to which access is not otherwise available for the seizing officer.

A case more applicable to the facts on hand is *Conner v. City of Santa Ana,* 897 F.2d 1487 (9th Cir.Cal.1990), *cert denied, Santa Ana v. Conner,* 498 U.S. 816, 111 S.Ct. 59, 112 L.Ed.2d 34 (1990). In *Conner,* the City of Santa Ana passed a nuisance ordinance which provided that the police or its agents had the authority to remove abandoned, wrecked, dismantled, or inoperative vehicles from private property. The police were advised that the Conners ("owners") were storing inoperable vehicles on their property. Believing that the vehicles may have constituted a public nuisance under the ordinance, the police, without a search warrant, scaled the fence and inspected the vehicles. After holding a hearing pursuant to the ordinance, the hearing officer found that the vehicles constituted a public nuisance and that the cars should be abated. The owners appealed the determination to the Santa Ana City Council. The City Council upheld the hearing officer's determination. *Id.* at 1489.

Approximately four months later, city officials, without a warrant, broke down the fence surrounding the owners's property and removed two of the vehicles from the property. The owners filed suit claiming that the warrantless searches and seizures violated the Fourth Amendment. *Id.* The district court concluded that the warrantless seizure of the vehicles did not violate the Fourth Amendment because the entry onto the property and subsequent seizure was preceded by numerous hearings and appeals. The district court stated that "it is surely not reasonable to require a warrant to abate every nuisance ... where the citizens involved have already had a full and fair procedure wherein they had the opportunity to contest the need and propriety of the abatement in their specific case." *Id.* at 1490.

The Ninth Circuit Court of Appeals disagreed with the district court's rationale. Citing *Michigan v. Tyler,* 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978), the Ninth Circuit held that the warrant requirement of the Fourth Amendment applied to entries on private land not only to search for and abate suspected nuisances, but known nuisances as well. *Id.* The Ninth Circuit further stated that the U.S. Supreme Court has held that a warrant is required for entry even after a violation of law is established. *Id.* at 1491, citing *G.M. Leasing,* 429 U.S. 338, 97 S.Ct. 619, 50 L.Ed.2d 530.

On appeal, the City of Santa Ana argued that it afforded the owners sufficient process to make the warrantless entry onto, and the subsequent seizure of the vehicles, proper under the Fourth Amendment. The Ninth Circuit disagreed. The court stated that it was unaware of any case which had created a "process" exception to the warrant requirement. Relying on *G.M. Leasing,* the court noted that the taxpayer in that case had numerous opportunities both before and after the taxes were assessed to rectify any errors. The availability of such process to the taxpayer, however, played no role in the Supreme Court's straightforward application of the Fourth Amendment to the warrantless seizure of the taxpayer's property. *Id.* at 1491. Noting that the Supreme Court held that the validity of the tax assessments established only probable cause for the seizures, and did not establish the reasonableness for the warrantless entry onto the taxpayer's property, the Ninth Circuit similarly held that the abatement hearings afforded to the owners, only established the validity of

the seizure. *Id.* The Ninth Circuit concluded that the warrantless entry onto the owners's property and subsequent seizure of the vehicles violated the Fourth Amendment despite how reasonable the warrantless search and seizure appeared in the light of the pre-seizure process afforded to the owners. *Id.* at 1492.

City argues that a similar ordinance, which provided a ten day notice and a hearing, was held not to violate the Fourth Amendment in *Price.* City's reliance upon *Price,* however, is misplaced. In *Price,* the plaintiffs argued that the ordinance allowed the police to enter upon private property to examine or remove vehicles without first obtaining a warrant, and therefore, violated the Fourth Amendment. The Fifth Circuit Court of Appeals held that the ordinance did not authorize warrantless searches. Although the ordinance allowed law enforcement officials to enter private property to enforce the ordinance, the ordinance also contained a provision which stated that the city's municipal court shall have the authority to issue all orders necessary to enforce the ordinance. This provision required a warrant prior to the entry upon private property, and therefore, the ordinance was not invalid on its face. 711 F.2d at 592.

Unlike the ordinance in *Price,* the City's ordinance does not contain a provision which requires a warrant to enter private property to remove inoperable vehicles. The City's ordinance, read narrowly, authorizes the police or the Director of Streets to remove inoperable vehicles situated upon private property. The ordinance does not refer to warrantless intrusions into privacy. Absent consent or exigent circumstances, the police or its agents must have a warrant to enter private property to remove a vehicle where such entry would invade a constitutionally protected privacy interest. *See, Gleaves v. Waters,* 175 Cal.App.3d 413, 220 Cal.Rptr. 621, 625 (Cal.App.3d Dist. 1985)(Court held that, absent consent or exigent circumstances, officials engaged in the abatement of a public nuisance must have a warrant to enter an enclosed backyard). Since the Fourth Amendment is applicable to the States through the Fourteenth Amendment, the City is obligated to implement an ordinance that complies with the Fourth Amendment's requirements.

We are mindful of the public policy considerations underlying the enforcement of municipal ordinances. Municipalities have the police power to provide for the public health, safety, and welfare of its inhabitants. An ordinance which requires its residents to remove inoperable vehicles from their land or enclose them within a fence or building is not an arbitrary or unreasonable method of promoting this interest. However, formulating a warrant procedure that follows the standards set forth in *Camara* and its progeny would not thwart public policy, but would protect the privacy interests of the City's residents.

For instance, in *Price,* the case relied heavily upon by the City, the ordinance provided that the chief of police, or his agent, could enter upon private property to remove a vehicle that had been declared a nuisance. 711 F.2d at 586 n.1. The ordinance further provided, however, that the city's municipal court shall have the authority to issue all orders necessary to enforce the ordinance. *Id.* A similar provision, requiring the official entering private property, to obtain a warrant, should be adopted here. Once it has been determined that an individual's motor vehicle violates the ordinance, the City may proceed to enforce the ordinance by either obtaining the individual's consent to enter the property or by obtaining a warrant. If the individual refuses entry upon his property, then the enforcing officials may seek a warrant by swearing out an appropriate affidavit stating that the individual's vehicle has been found to violate the City's ordinance. Armed with this warrant from a judicial officer, the official may then enter the individual's property to remove the vehicle.

We do not mean to suggest that the warrant requirement extends to all entries onto private property for nuisance abatement purposes, such as removing inoperable motor vehicles. Rather, the requirement applies only to those entries which intrude upon constitutionally recognized expectations of privacy. *See, Gleaves,* 220 Cal.Rptr. at 625. For it is the prospective invasion of constitu-

tionally protected interests by an entry onto private property and not the purpose of the entry which mandates a warrant. *Conner,* 897 F.2d at 1490–91.

For example, in *Schneider v. County of San Diego,* 28 F.3d 89 (9th Cir. 1994), an individual who owned a 1.4 acre lot parked some vehicles in an open field approximately 240 feet away from a house he rented to some tenants. After the County of San Diego determined that the vehicles constituted a public nuisance under the applicable zoning ordinances, the vehicles were towed away from the lot. On appeal, the vehicle owner argued that the county violated the Fourth Amendment when the county entered his property and removed his vehicles. Although the court noted that the Fourth Amendment's warrant requirement applied to entries into private property to abate a declared nuisance, it found that a warrant was unnecessary for the seizure of the vehicles in this case in that the seizure did not impinge upon any legitimate privacy interest since the owner of the vehicles and the land did not live in the house. *Id.* at 91–92.

In *Hroch v. City of Omaha,* 4 F.3d 693 (8th Cir. 1993), Hroch purchased some abandoned buildings in Omaha for storage purposes. Subsequently, the buildings deteriorated and became a haven for transients. After receiving numerous complaints about the buildings, the city condemned the buildings as public nuisances. The buildings were later demolished pursuant to the condemnation order. On appeal, Hroch argued that his Fourth Amendment rights were violated when his buildings and the personal property contained within were demolished (seized) without a warrant. Holding that the warrantless implementation of the condemnation order was not an unreasonable seizure, the court distinguished *Conner* from the case before it. *Id.* at 696. Unlike *Conner,* which involved the warrantless seizure of vehicles from an owner's enclosed backyard, Hroch did not live at the buildings nor did he take any steps to protect the personal property contained in the buildings. *Id.* at 696. Therefore, the court concluded the Hroch's Fourth Amendment interest in the premises

was negligible because he failed to take "normal precautions to maintain his privacy." *Id.*

Thus, in some situations, a warrant may not be required because the entry upon private land would not infringe upon a legitimate expectation of privacy. Unlike *Hroch* and *Schneider,* however, the majority of cases are likely to involve property owners who have a legitimate expectation to the area surrounding their homes. Further, from a policy standpoint, a vehicle seized pursuant to a court order is less likely to be found to be an "unreasonable" seizure. *See Coleman v. Watt,* 40 F.3d 255, 263 (8th Cir. 1994).

In summary, we reverse the trial court's finding that the ordinance is arbitrary and bears no relationship to the promotion of the public health, safety, and welfare. We further reverse the trial court's order and judgment that the ordinance is unconstitutional on the basis that it deprived respondent of his property without due process or just compensation as these issues were not presented to the trial court. Finally, we affirm the trial court's judgment enjoining the City from entering private property pursuant to the ordinance to remove inoperable vehicles without first obtaining consent or a obtaining a warrant. The ordinance is unconstitutional under the Fourth Amendment insofar as it purports to authorize removal of vehicles from private property without a warrant. *See, Marshall v. Barlow's Inc.,* 436 U.S. 307, 325, 98 S.Ct. 1816, 1827, 56 L.Ed.2d 305 (1978).

CRANE, P.J., and JAMES R. DOWD, J., concur.