**CITY OF BELLEFONTAINE NEIGHBORS, Plaintiff/Respondent,**

v.

**Mark SCATIZZI, Defendant/Appellant.**

**No. ED 92965.**

Missouri Court of Appeals, Eastern District, Division One.

Jan. 26, 2010.

---

1. All rule references are to Mo. R.Crim. P.2008, unless otherwise indicated.

Stephen C. Murphy, St. Louis, MO, for appellant.

Stephanie E. Karr, St. Louis, MO, for respondent.

## OPINION

CLIFFORD H. AHRENS, Presiding Judge.

Mark Scatizzi (Defendant) appeals from the trial court's judgment finding that he violated section 112.4(a) of ordinance 2057 of the City of Bellefontaine Neighbors (City) by marketing residential property without first applying for a certificate of building code compliance. The trial court imposed a fine of $100 plus costs. Defendant appeals, arguing that the ordinance is unconstitutional and violates section 67.317 RSMo (2000). We reverse.

### Background

The parties submitted the case to the trial court on stipulated facts. Defendant is a real estate agent licensed by the State of Missouri. The City is a fourth class Missouri city. Section 112.4(a) of the City's property maintenance code, enumerated as ordinance 2057,[1] prohibits the advertisement of real estate "without first applying for the issuance of a certificate of compliance by the code official." In practice, the ordinance requires an owner or agent to file a one-page form requesting inspection of the property by a City official to determine compliance with the building code. If the property is in compliance, then a certificate of compliance will issue. If the property is in violation of any code

---

1. Ordinance 2057 comprises the City's entire property maintenance code.

provisions, then the official will issue a report describing conditions to be corrected before the property can be sold or leased.

Defendant entered into a listing contract for property at 1027 Addison located in the City, advertised the property for sale, and posted a "for sale" sign in the window of the property, all without first applying for an inspection. The City charged Defendant by information in municipal court with two ordinance violations: first, failure to have the property inspected and obtain a certificate of compliance from the City prior to marketing the property for sale, in violation of section 112.4(a) of ordinance 2057;[2] and second, displaying a "for sale" sign in the window in violation of ordinance 1362.

Defendant certified the case to the St. Louis County Circuit Court pursuant to rule 37.61 and section 479.130 RSMo but did not request a jury trial. Defendant admitted that he violated both ordinances but asserted that the ordinances are unconstitutional. The City dismissed its charge relating to ordinance 1362. The trial court found ordinance 2057 to be constitutional and imposed a fine against Defendant in the amount of $100 plus costs. Defendant appeals.

## Standard of Review

■ The violation of a municipal ordinance is a proceeding that is civil, rather than criminal in nature. *Frech v. City of Columbia*, 693 S.W.2d 813, 814 (Mo. banc 1985). We will affirm the trial court's decision unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.1976). "When a case is tried on stipulated facts, the only issue we review on appeal is whether the trial court reached the proper legal conclusions from the stipulated facts." *Bowan ex rel. Bowan v. General Sec. Indemn. Co. of Arizona*, 174 S.W.3d 1, 5 (Mo.App. E.D. 2005). We review the interpretation of a city ordinance *de novo*. *City of Strafford v. Croxdale*, 272 S.W.3d 401, 404 (Mo.App. S.D.2008); *HHC Medical Group, P.C. v. City of Creve Coeur Board of Adjustment*, 99 S.W.3d 68, 71 (Mo.App. E.D.2003).

## Discussion

### I. *Constitutionality*

■ In his first point, Defendant asserts that the trial court erred in enforcing section 112.4(a) of ordinance 2057 because it violates his right to free speech, his right to contract, and his right against unreasonable search and seizure.[3] Regarding speech, Defendant contends specifically that, by prohibiting an owner or agent from advertising property without first applying for a certificate of compliance, section 112.4(a) places an unconstitutional restriction on commercial speech. We agree.

■ The First Amendment, applied to the states through the Fourteenth Amendment, protects commercial speech from unwarranted governmental regulation. *Central Hudson Gas & Electric Corp. v. Public Service Comm'n of New York*, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980). The U.S. Supreme Court held that a city ordinance banning "for sale" signs

---

**2.** Ordinance 2057 does not require an owner or agent to obtain the inspection and certificate of compliance prior to advertising, as the City's information suggests. It merely requires that the application be filed.

**3.** Though Defendant's first point violates rule 84.04 by collapsing multiple legal issues into a single point, given the constitutional concerns Defendant raises, we elect to review the merits *ex gratia*.

on residential property violated the First Amendment in *Linmark Associates, Inc. v. Willingboro*, 431 U.S. 85, 97 S.Ct. 1614, 52 L.Ed.2d 155 (1977). There, the defendant township prohibited "for sale" signs in order to curtail what it perceived as "white flight" from racially integrated neighborhoods. The Court recognized the important governmental interest of integrated housing but found the record void of any definite connection between the goal of integration and the ban on signs. *Id.* at 95–96, 97 S.Ct. 1614. It further suggested that the township could advance its interests in less restrictive ways that did not hinder the free flow of truthful information between sellers and potential buyers. *Id.* at 97–98, 97 S.Ct. 1614.

■ Three years after *Linmark*, the Court enunciated a four-part analysis to determine whether a governmental regulation on commercial speech is constitutional. For commercial speech to enjoy First Amendment protection, "it at least must concern lawful activity and not be misleading. Next, we ask whether the governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest." *Central Hudson* at 566, 100 S.Ct. 2343

Applying the principles of *Linmark* and *Central Hudson* to the facts before us, we conclude that section 112.4(a) of ordinance 2057 cannot stand. The City fails to demonstrate, and the record lacks any evidence, that the City's restriction on advertising, albeit surmountable,[4] advances directly and in the least restrictive manner the City's goal of safe housing.

■ The first two inquiries under *Central Hudson* are not disputed here. First, the commercial speech that the City seeks to regulate, namely real estate advertising, concerns a lawful activity and is not misleading. Second, the City's asserted governmental interest in safe housing is substantial. But the City fails to establish that section 112.4(a) satisfies *Central Hudson's* third and fourth requirements. Defendant asserts, and this court agrees, that the City's restriction on real estate advertising is not directly related to its interest in safe housing. The City does not connect the two beyond a cursory explanation that the application triggers the inspection process, which itself ultimately ensures that a building is code-compliant and thus safe for new inhabitants. But other sections of the ordinance already require an owner to achieve code compliance and obtain a certificate thereof prior to transferring ownership (i.e., before closing) or possession (i.e., in a rental context). Ord. 2057, § 112.5 to § 112.7. The City fails to articulate why it must condition lawful advertising on the commencement of the inspection process. This disconnect is doubly fatal when examined under *Central Hudson's* fourth and final factor. Lacking any relation to its stated purpose, the City's regulation is thus inevitably more extensive than necessary to serve its interest in safe housing. In its brief, the City repeatedly emphasizes that the inspection itself and resulting code compliance further its legitimate interest in safe housing. But, looking further upstream to the inspection *application*, the City neglects to explain how this impediment on constitutionally protected commercial speech is no more restrictive than necessary to further

---

4. At first glance, the City's prerequisite for advertising might appear to call for an analysis under the doctrine of prior restraint. Upon further examination, however, we conclude that such an examination does not apply here. See generally *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990).

its housing interest, particularly where that interest is fully protected elsewhere in the ordinance without affecting speech at all. Recalling *Linmark,* we observe that the City is already advancing its stated interest in less restrictive ways that do not hinder the free flow of truthful commercial information between sellers and potential buyers. As such, its restriction on advertising, though minimal, is unjustified. "There is no *de minimus* exception for a speech restriction that lacks sufficient tailoring or justification." *Lorillard Tobacco Co. v. Reilly,* 533 U.S. 525, 567, 121 S.Ct. 2404, 2428, 150 L.Ed.2d 532 (2001). We hold, therefore, that section 112.4(a) of ordinance 2057 violates the First Amendment of the U.S. Constitution.[5] We need not reach Defendant's parallel argument based on the Missouri Constitution.

Point granted. Nonetheless, we proceed to Appellant's second point due to its relation in principle to the first point but also as an independent basis for invalidating section 112.4(a) of ordinance 2057.

## II. *Section 67.317 Violation*

■ In his second point, Defendant asserts that the trial court erred in not finding that section 112.4(a) of ordinance 2057 violates section 67.317 RSMo, which prohibits municipalities from restricting the right of homeowners and their agents to erect signs advertising real property for sale except as to sign size. Our review is *de novo. City of Kansas City v. Carlson,* 292 S.W.3d 368, 370 (Mo.App.2009).

Section 67.317 provides:

No political subdivision of this state shall enact or enforce any ordinance which forbids or restricts the right of any owner of an interest in real property or his agent from displaying on the property a

sign of reasonable dimensions, as may be determined by local ordinance, advertising:

(1) The property interest is for sale, lease or exchange by the owner or his agent;

(2) The owner's or agent's names; and

(3) The owner's or agent's address and telephone number.

Section 112.4(a) of ordinance 2057 provides:

It shall be unlawful for the owner or lessor of any property subject to the provisions of this code, or their agent, to advertise in any way, or to list with a real estate agent or other broker, such property for the purpose of selling, leasing, renting, or otherwise transferring ownership or possession, without first applying for the issuance of a Certificate of Compliance by the code official.

Superimposing the plain language of section 112.4(a) of ordinance 2057 over that of section 67.317 RSMo compels the conclusion that the ordinance violates the statute. The Supreme Court of Missouri reached such a conclusion under similar facts in *City of Dellwood v. Twyford,* 912 S.W.2d 58 (Mo.1995). There, the city's ordinance required owners to submit an application and pay a fee before advertising real property for sale. Noting that section 67.317 does not authorize cities to impose *any* restrictions other than reasonable dimension restrictions, the Court held the ordinance invalid. *Id.* at 60. Likewise here, section 112.4(a) of ordinance 2057 purports to impose a restriction that section 67.317 expressly prohibits. As such, we hold it invalid. Point granted.

---

**5.** Ordinance 2057 contains a severability clause preserving the validity of the remain-

der of the code not affected by this holding.

## Conclusion

The judgment of the trial court is reversed.

NANNETTE A. BAKER, and KURT S. ODENWALD, JJ., concur.