**CITY OF CREVE COEUR,**
**Respondent,**

v.

**Mary NOTTEBROK, Appellant.**

**No. ED 96396.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Oct. 25, 2011.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 5, 2011.

Application for Transfer
Denied Jan. 31, 2012.

W. Bevia Schock, Ste., Hugh A. Eastwood, Ste., St. Louis, MO, for Appellant.

Carl J. Lumley, Edward J. Sluys, Curtis, Heinz, Garrett & O'Keefe, P.C., St. Louis, MO, for Respondent.

Before ROBERT G. DOWD, JR., P.J., MARY K. HOFF, J., and SHERRI B. SULLIVAN, J.

## OPINION

PER CURIAM.

Mary Nottebrok (Car Owner) appeals from the trial court's judgment finding Car Owner guilty of violating the City of Creve Coeur's (the City) "red light violation" ordinance. We affirm.

### Factual and Procedural History

On August 11, 2009, Car Owner's vehicle was photographed by the City's "red light" camera as the vehicle traveled through an intersection near the northbound Interstate 270 off ramp at Olive Boulevard. The electric signal light was red when Car Owner's vehicle entered the intersection. Ten days later, the City issued a Notice of Violation of Public Safety at Intersection (ticket) to Car Owner informing Car Owner that her car had been "illegally present [in the intersection] during red light" in violation of the City's Ordinance No. 315.140. Printed on the ticket were three photographs depicting Car Owner's vehicle: a photograph of the rear license plate, a photograph of Car Owner's vehicle entering the intersection, and a photograph of Car Owner's vehicle exiting the intersection. The ticket identified Car Owner's vehicle by year, manufacturer, model, and license plate number. The ticket informed Car Owner that the penalty for violating Ordinance No. 315.140 was a $100 fine, which was due thirty days from the date the ticket was issued. The ticket further informed Car Owner that the violation was a non-moving violation, so no points would be assessed against her driver's license. A police officer employed by the City had signed the ticket. The following information, *inter alia*, appeared on the back of the ticket:

The [City] has adopted regulations for the automated enforcement of traffic control signal regulations. Accordingly, pursuant to the terms of Ordinance 16–398, the [City] Police Department is authorized to install and operate an intersection safety program which uses automated red light cameras to enforce public safety violations. It has been determined that your vehicle was present in an intersection when the traffic control signal, for the direction in which your vehicle was traveling, was emitting a steady red signal; red light violations damage the public by endangering vehicle operators and pedestrians alike.

Keep in mind that if you were making a right hand turn on a red light, you should have come to a complete stop and checked that the way was clear before making the right hand turn.

This violation is a non-moving infraction and no points will be assessed.

. . .

**ADMINISTRATIVE REVIEW: IMPORTANT:** The owner of a vehicle cannot transfer liability to the driver of the vehicle. The vehicle owner is responsible for the violation notice. If, at the time and place of the violation, the motor vehicle was in the intersection due to a recognized exception (Recognized exceptions are listed in Code Section 16–398, which can be viewed at the City's website . . .), the OWNER may submit information to that effect on a form provided by [the City's] Municipal Court within ten days of receipt of this notice. Upon receiving your information, the Prosecutor will review your case. You will be notified of the outcome through the U.S. mail.

. . .

**COURT HEARING:** If you fail to pay or otherwise fail to respond to this Notice of Violation as directed, you will receive a Notice to Appear in Court. Car Owner did not respond to the ticket.

Consequently, on September 28, 2009, the City issued a Notice to Appear informing Car Owner that she was required to appear in the City's municipal court on November 4, 2009. Car Owner instead filed a Motion to Dismiss Based on Defect in the Institution of the Prosecution (Motion to Dismiss). The Motion to Dismiss alleged that Car Owner's due process rights under the United States and Missouri Constitutions had been violated because the City did not have probable cause to believe she had violated Ordinance No. 315.140 in that the ordinance "essentially creates a status offense, similar to a parking ticket" and "makes the identity of the driver irrelevant." The Motion to Dismiss further alleged that Ordinance No. 315.140 conflicted with Missouri law because Chapter 302 of the Revised Missouri Statutes prescribes a point system for the suspension or revocation of licenses based on moving violations and requires municipalities to report points to the Director of Revenue, but Ordinance No. 315.140 expressly disallowed the assessment or reporting of points. The Motion to Dismiss also alleged that Ordinance No. 315.140 imposed strict liability on vehicle owners while state statutes imposed liability only on drivers; thus, the City had acted outside of its authority by enacting an ordinance with a lower burden of proof than that required by Missouri criminal procedure for a violation of state statute, thereby circumventing state law and destroying Car Owner's ability "to defend herself within constitutional norms."

The municipal court called, heard, and denied Car Owner's Motion to Dismiss. Car Owner and the City subsequently submitted the case to the municipal court on stipulated facts. The municipal court found Car Owner guilty of violating Ordinance No. 315.140 and ordered Car Owner to pay a fine of $100.

Car Owner thereafter filed an application for trial *de novo* and a second Motion to Dismiss with the trial court. In her second Motion to Dismiss, Car Owner essentially reiterated the allegations contained in her first Motion to Dismiss filed with the municipal court. The City filed Suggestions in Opposition to Car Owner's second Motion to Dismiss. The City's Suggestions in Opposition argued (1) Ordinance No. 315.140 was a public safety ordinance that, like parking restrictions, placed strict liability on the owner of the vehicle and assessed only a "modest fine" as a sanction; (2) "[m]ovement" was not an element required to prove the violation of the ordinance, so violators of the ordinance were not assessed points on their driving records; (3) Ordinance No. 315.140 expressly provided that incarceration was not a possible sanction; (4) the City derived its power to enact laws from the Missouri Constitution; and (5) Ordinance No. 315.140 did not conflict with Missouri law but applied additional traffic regulation as authorized by Section 304.120.2(1) [1]. The trial court subsequently denied Car Owner's second Motion to Dismiss. The case proceeded to trial, and the parties submitted the matter to the trial court on stipulated facts. After receiving evidence and hearing arguments, the trial court took the case under submission. Later, the trial court entered its verdict and judgment finding Car Owner guilty of violating Ordinance No. 315.140. The trial court imposed a fine of $100. This appeal followed.

*Standard of Review*

▮▮ "[V]iolations of municipal ordinances are civil matters but, because of the

---

**1.** All statutory references are to RSMo 2000, unless otherwise indicated.

quasi-criminal nature of an ordinance, are subject to the criminal standard of proof beyond a reasonable doubt." *City of Dexter v. McClain*, 345 S.W.3d 883, 885 (Mo. App. S.D.2011); *see also City of Bellefontaine Neighbors v. Scatizzi*, 302 S.W.3d 730, 732 (Mo.App. E.D.2010), and *City of Kansas City v. Heather*, 273 S.W.3d 592, 595 (Mo.App. W.D.2009). Under Missouri law, violations of municipal ordinances shall be heard and determined only before divisions of the circuit court. Section 479.010 RSMo. Cum.Supp.2007; *City of Springfield v. Belt*, 307 S.W.3d 649, 653 (Mo. banc 2010). In reviewing the trial court's judgment regarding the violation of a municipal ordinance, we will affirm the trial court's decision unless there is no substantial evidence to support it, the judgment is against the weight of the evidence, or the judgment erroneously declares or applies the law. *City of Dexter*, 345 S.W.3d at 885; *City of Bellefontaine Neighbors*, 302 S.W.3d at 732, *citing Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Further, where a case involving the violation of a municipal ordinance is tried on stipulated facts, the only issue we review on appeal is whether the trial court reached the proper legal conclusions from the stipulated facts. *City of Bellefontaine Neighbors*, 302 S.W.3d at 732. "We review the interpretation of a city ordinance *de novo.*" *Id.*

### Point I

In her first point on appeal, Car Owner claims the trial court erred in denying her Motion to Dismiss because the Ordinance and prosecution violated her constitutional right to procedural due process in that due process requires the officer issuing the ticket to have a belief, based on probable cause, that the person cited in the ticket is the driver of the vehicle in question and not merely the owner of the vehicle.

The City counter argues that the identity of a vehicle's operator at the time the vehicle is in violation of Ordinance No. 315.140 is irrelevant because (1) neither the ordinance nor state law requires a showing that the owner of the vehicle was the operator of the vehicle; (2) the ordinance is valid under Missouri law; (3) the City has not impermissibly reversed the burden of proof; (4) the ordinance is civil in nature, not criminal, for purposes of due process; and (5) the ordinance is a valid exercise of the City's police powers.

Both the United States and the Missouri constitutions prohibit the taking of life, liberty, or property without due process of law. U.S. Const. amend. XIV; Mo. Const. Art. 1, Section 10. To determine what process is due in a particular case, the court first determines whether an individual has been deprived of a constitutionally protected liberty or property interest. *Jamison v. State, Dept. of Social Services, Div. of Family Services*, 218 S.W.3d 399, 405 (Mo. banc 2007). If so, the court next examines whether the procedures leading to the deprivation of that interest were constitutionally sufficient. *Jamison*, 218 S.W.3d at 405. "Under both the federal and state constitutions, the fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* (internal quotations omitted). However, civil ordinances "need not provide the heightened procedural protections required by the Fifth, Sixth, and Eighth Amendments of the U.S. Constitution." *Mills v. City of Springfield*, 2010 WL 3526208, at *12 (W.D.Mo.2010).

An automated traffic ordinance is considered to be a civil ordinance where (1) the ordinance includes express language indicating a municipality's intention to consider a violation of the ordinance to be civil in nature; (2) the ordinance impos-

es a sanction that does not involve an affirmative disability or restraint on the individual but merely imposes a fine without assessing points against an individual's driver's license; (3) the civil, non-point penalty for violating the ordinance is assessed without regard to the individual's knowledge or state of mind at the time of the violation; (4) the presence of the deterrent purpose of the sanction may serve civil as well as punitive goals; (5) the behavior to which the sanction applies is not already a crime; (6) the ordinance is rationally connected to the broader, legitimate non-punitive purpose of promoting public safety; and (7) the sanction imposed by the ordinance does not appear excessive in relation to the ordinance's purpose of promoting public safety. *Mills*, 2010 WL 3526208 at \*8–\*12, *citing Kilper v. City of Arnold, Mo.*, 2009 WL 2208404, at \*13–\*19 (E.D.Mo.2009), *and Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 168, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963).

 "The purpose of police power is to promote the public health, safety, and welfare." *St. Charles County v. St. Charles Sign & Electric, Inc.*, 237 S.W.3d 272, 275 (Mo.App. E.D.2007), *quoting Bezayiff v. City of St. Louis*, 963 S.W.2d 225, 229 (Mo.App. E.D.1997). Although a city's police power is not unlimited, it is very broad. *St. Charles Sign & Electric*, 237 S.W.3d at 275; *Bezayiff*, 963 S.W.2d at 229. "The test of whether an ordinance is fairly referable to a legitimate exercise of police power is whether the expressed requirements of the ordinance have a substantial and rational relationship to the health, safety, peace, comfort, and general welfare of the inhabitants of the municipality." *Bezayiff*, 963 S.W.2d at 229. We presume that an ordinance enacted pursuant to a municipality's police power is valid, and the party challenging the ordinance bears the burden of proving its invalidity.

*Id.* "The burden is on the party contesting the ordinance to negate every conceivable basis which might support it." *Id.* If reasonable minds might differ as to whether a particular ordinance is substantially related to the protection of the general health, safety, or welfare of the public, then the issue must be decided in favor of the ordinance. *Id.*

Any municipal corporation in Missouri, whether under general or special charter, and having authority to pass ordinances regulating subjects, matters, and things upon which there is a general law of the state, unless otherwise prescribed or authorized by some special provision of its charter, shall confine and restrict its jurisdiction and the passage of its ordinances to and in conformity with the state law upon the same subject. Section 71.010. Missouri municipalities may, by ordinance, make additional rules of the road or traffic regulations to meet their needs and traffic conditions as long as the ordinance is not contrary to or in conflict with state statutes. Section 304.120.

 Here, we find that Ordinance No. 315.140 was a civil ordinance, was properly enacted pursuant the City's police power for regulating public safety, and did not violate Missouri law.

First, the language of Ordinance No. 315.140 indicated that the City intended for the ordinance to be civil in nature:

Whereas, [the City] finds and declares that a vehicle that is present in an intersection, while the Traffic Control Signal for the intersection is emitting a steady red signal for the direction of travel or orientation of that vehicle in or through the intersection ("red light violation"), absent certain recognized grounds justifying such presence, poses a serious risk and detriment to the public including by endangering motor vehicle operators and pedestrians, by decreasing the effi-

ciency of traffic control and traffic flow, and by increasing the number of serious accidents to which public safety agencies must respond at the expense of the taxpayers[.][2]

. . .

B. *Violation Of Public Safety At Intersections.* Except as otherwise provided in this Section, a person commits the **infraction** of violation of public safety at an intersection when a motor vehicle of which that person is an owner is present in an intersection while the traffic control signal for the intersection is emitting a steady red signal for the direction of travel or orientation of that vehicle in or through the intersection, unless the motor vehicle is in the process of making a lawful turn or unless the motor vehicle entered the intersection while the traffic control signal for the intersection was emitting a steady yellow signal for the direction of travel or orientation of that vehicle in or through the intersection and the motor vehicle did not obstruct the passage of other vehicles or pedestrians . . . .

City of Creve Coeur City Council Bill No. 5012 (2006); Ordinance No. 315.140.B (emphasis added). The express language of the ordinance made clear that a violation constituted an infraction, not a crime. A violation could occur even if Car Owner did not know or did not intend for her vehicle to enter the intersection while the light was red. Furthermore, Ordinance No. 315.140 merely required a fine to be imposed as a sanction for the infraction:

E. Notwithstanding any other provision of the City Code of Ordinances, the fine for the infraction of violation of public safety at an intersection shall be set by the Municipal Court from time to time on the schedule for the Violations Bureau (VB) and **under no circumstances may a person be imprisoned for such an infraction.**

(Emphasis added.)

Second, Ordinance No. 315.140 was enacted pursuant to the City's police power for regulating public safety. When it adopted Ordinance No. 315.140, the City specifically stated that "automated photo traffic enforcement programs in other jurisdictions throughout the United States have proven to significantly improve public safety by reducing the number of red light violations in those jurisdictions[.]" The City declared that the ordinance's purpose was to protect the "public health, safety, and welfare of the citizens of the City." The City also expressed its desire "to promote public safety through the implementation of safety programs which are proven to reduce red light violations, including an automated photo traffic enforcement program." Significantly, Car Owner did not present any evidence challenging the City's authority to enact traffic ordinances for regulating public safety or challenging the City's claim that automated traffic enforcement programs reduce red light violations.

Third, the City was not required to prove that Car Owner was the driver of the vehicle at the time the violation occurred or that the police officer signing the ticket had probable cause to believe that Car Owner was operating the vehicle at the time the violation occurred. Ordinance No. 315.140 imposed liability on Car Owner, not the driver:

Liability hereunder is based on ownership, without regard to whether the owner was operating the motor vehicle at the time of the violation, except

2. This language appeared in the enactment provision of Council Bill No. 5012, which was adopted by the City as Ordinance No. 315.140.

that, as provided in Section 304.120.4, RSMo., no liability shall be imposed on the owner of a motor vehicle when the vehicle is being permissively used by a lessee if the owner furnishes the name, address and operator's license number of the person renting or leasing the motor vehicle at the time the violation occurred to the City within thirty (30) days from the time of receipt of written request for such information.

C. *Automated Photo Traffic Enforcement System Authorized.* An automated photo traffic enforcement system is hereby authorized to be installed and operated within the City for the purpose of detecting violations of public safety at intersections. Specific system locations shall be determined from time to time by the City Administrator. Recorded images shall constitute sufficient basis for citation if alone or in combination they clearly show that the traffic control signal for an intersection is emitting a steady red signal for the direction of travel or orientation of a motor vehicle in or through the intersection, the motor vehicle present in the intersection and the license plate and license number of the motor vehicle. Recorded images may also be used as evidence of other violations to the extent permitted by applicable law.

Ordinance No. 315.140.B and .C (emphasis added).

The ordinance at issue in the instant case is similar to the ordinance at issue in *City of Kansas City v. Hertz Corp.*, 499 S.W.2d 449 (Mo.1973). There, the Missouri Supreme Court found that a municipal ordinance regulating parking and imposing liability on the owner of the vehicle rather than on the driver of the vehicle did not violate either the United States Constitution or the Missouri Constitution. In *Hertz*, the City of Kansas City enacted an ordinance providing that "the owner or person in whose name" a vehicle was registered would be held liable if the vehicle was found illegally parked and the driver was not present. 499 S.W.2d at 451. We find the Supreme Court's reasoning in *Hertz* instructive:

> The purpose of ordinances regulating parking is to permit the public streets to be used to their best advantage by the public. The maximum penalty is a relatively small fine and no potential incarceration. There is no public stigma attached to receiving a parking ticket and it has no effect upon one's driver's license or insurance cost. If the ticket is paid promptly, no court appearance is required. The movement of automobile traffic is a major problem in the cities of this state. Cars illegally parked contribute substantially to that problem and the enforcement of parking regulations is difficult and expensive. Most cars are driven by the owner, some member of the owner's family, or his employee or lessee and with the owner's consent. An ordinance imposing liability for the parking violation fine on the owner as well as the driver may very well result in fewer violations and thereby assist in the reduction of traffic problems.

*Hertz*, 499 S.W.2d 449, 454. Consistent with the Supreme Court's reasoning in *Hertz*, Missouri law provides that a municipal ordinance can impose liability on a vehicle owner if another person parks or operates the vehicle in violation of the ordinance. *See* Section 304.120.4. If the vehicle owner fails or refuses to provide the name, address, and operator's license number of the person in possession of the vehicle at the time the violation occurred to the proper municipal authority within three working days from the time of receipt of written request for such information, the vehicle owner shall be liable for

the imposition of any fine established by municipal ordinance for the violation. *Id.*

In this case, Car Owner did not contest that she owned the vehicle. Car Owner did not assert that she had given someone else permission to drive the vehicle at the time the violation occurred. Moreover, Car Owner did not assert that her vehicle's presence in the intersection was justified pursuant to any of the exceptions enunciated in Ordinance No. 315.140.B (traffic control signal not in proper position and sufficiently legible; operator of vehicle acting in compliance with lawful order or direction of police officer; operator of vehicle violated traffic signal in order to yield right-of-way to emergency vehicle; vehicle was being operated as part of a funeral procession; vehicle was being operated as an emergency vehicle under Section 304.022; vehicle had been stolen and was being operated by someone other than the owner without the owner's consent; the license plate or tags depicted in the photographs and included with the ticket had been stolen and were being displayed on a vehicle other than the vehicle for which they had been issued and theft had been timely reported to law enforcement; ownership of the vehicle had been transferred prior to the violation; or the vehicle was present in the intersection because it was inoperable). The photographs on the ticket depicted Car Owner's vehicle in the intersection while the traffic light was red. The photographs clearly showed the vehicle's license plate number and the make and model of the vehicle, which were registered to Car Owner. Car Owner's liability for the violation of Ordinance No. 315.140 was predicated on her status as owner of the vehicle regardless of whether she was the driver of the vehicle at the time the violation occurred unless one of the ordinance's exceptions applied. *See Hertz,* 499 S.W.2d 449, 454. Consequently, the trial court properly denied Car Owner's Motion to Dismiss. Point denied.

### Point II

In her second point on appeal, Car Owner claims the trial court erred in denying her Motion to Dismiss because Ordinance No. 315.140 violates Missouri's statutes governing driver licenses in that the statutes require the assessment of points against drivers' licenses for moving violations, but a violation of the Ordinance requires no assessment of points.

The City counter argues that (1) Ordinance No. 315.140 does not create a "moving" violation; and (2) Ordinance No. 315.140 does not state that points will not be assessed against the license of the driver of the vehicle.

Any municipal corporation in this state, whether under general or special charter, and having authority to pass ordinances regulating subjects, matters, and things upon which there is a general law of the state, unless otherwise prescribed or authorized by some special provision of its charter, shall confine and restrict its jurisdiction and the passage of its ordinances to and in conformity with the state law upon the same subject. Section 71.010. Municipalities may enact ordinances that create additional rules of the road or traffic regulations that meet their needs and traffic conditions as long as the ordinance's provisions are consistent with and do not conflict with state law. Section 304.120.2 and .3.

In Missouri, the director of revenue shall put into effect a point system for the suspension and revocation of licenses, which shall be assessed only after a conviction or a forfeiture of collateral. Section 302.302.1 RSMo. Cum.Supp.2007. Two points will be assessed against a person's driver's license for any moving violation of a municipal ordinance not specifically listed in Section 302.302. *Id.*

Here, Car Owner's argument is without merit. The City was entitled to enact Ordinance No. 315.140 to meet the City's needs and traffic conditions as long as the ordinance's provisions were consistent with and did not conflict with state law. Section 304.120.2 and .3. State law required points to be assessed against either the operator or a non-operator of a vehicle for specific, enumerated traffic offenses. *See* Section 302.302.1 RSMo. Cum.Supp.2007. Car Owner was not convicted of any moving violation listed in Section 302.302 RSMo. Cum.Supp.2007. Car Owner was not convicted of any of the non-moving offenses listed in Section 302.302 RSMo. Cum.Supp.2007: obtaining a license by misrepresentation, Section 302.302.1(7) RSMo. Cum.Supp.2007; knowingly permitting unlicensed operator to operate a motor vehicle, Section 302.302.1(12) RSMo. Cum.Supp.2007; being convicted for failing to maintain financial responsibility pursuant to a county or municipal ordinance or to Section 303.025, Section 302.302(13) RSMo. Cum.Supp.2007. Furthermore, Section 302.302 did not specifically require the assessment of points against the owner of a vehicle for a violation of a municipality's red light camera ordinance. *See* 302.302.1 RSMo. Cum.Supp.2007.

Car Owner further argues that a violation of Ordinance No. 315.140 is a moving violation and, thus, the assessment of points against her driver's license was required in order for the ordinance to comply with state law. Section 302.302.1 RSMo. Cum.Supp.2007 required the assessment of points for any moving violation of a municipal ordinance not specifically listed in the statute. However, the plain language of Ordinance No. 315.140 indicated that the City intended a violation of the ordinance to be classified as a non-moving violation. Ordinance No. 315.140 did not prohibit "running a red light;" rather, Ordinance No. 315.140 prohibited the presence of a vehicle in an intersection when the traffic control signal for that intersection was emitting a steady red signal for the direction of travel or orientation of the vehicle. *See* Ordinance No. 315.140.C. The City intended to impose liability on a vehicle owner for a violation, not the "operator," unless one of the enumerated exceptions applied. *See* Ordinance No. 315.140.B. Under the City's ordinances, the term "operator" means "[a]ny person who operates or drives a motor vehicle and has the same meaning as ['']driver['']." Ordinance No. 315.140.A. Car Owner never asserted she was the "operator" of her vehicle when the violation occurred or that one of the ordinance's exceptions applied. Furthermore, the ticket that the City issued to Car Owner stated that the violation was "a non-moving infraction and no points [would] be assessed." Consequently, the trial court properly denied Car Owner's Motion to Dismiss. Point denied.

### Conclusion

The trial court's judgment is affirmed.